## MARTHA R. PETERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4330.   Promulgated April 30, 1945.

*Harold L. Clark, Esq.*, for the petitioner.
*C. A. Stutsman, Jr., Esq.*, for the respondent.

### OPINION.

ARNOLD, *Judge*: In this proceeding the Commissioner has determined an income tax deficiency for 1941 in the amount of $451.11.  Two issues are presented : (1) Whether petitioner is entitled to an amortization deduction for exhaustion of the cost of "excess rentals" paid under a lease on real property, the fee of which was acquired November 14, 1939; and (2) whether petitioner is entitled to deduct prepaid insurance on various policies covering a period of three years from the date written in 1941 by a taxpayer on the cash receipts and disbursements basis, or only an aliquot part of the insurance cost in each of the three years.

The Commissioner increased petitioner's income from rents by $1,247.76 in determining the deficiency herein, but made no adjustment with respect to exhausting petitioner's cost of "excess rentals," as the right to this deduction was merely noted in schedule J of petitioner's return without any amount being deducted for amortization of the alleged cost to her of "excess rentals."

The term "excess rentals" referred to is the difference between the rentals payable under the existing lease and the rental value as claimed by petitioner under conditions existing at or about the time she acquired her undivided interest in the real property.

The facts were stipulated and are adopted as stipulated.

The petitioner's principal residence is Boston, Massachusetts.  Her income tax return for 1941 was filed with the collector for the district of Massachusetts.

On or about June 22, 1910, petitioner acquired certain shares in the Phillips Estates Trust, hereinafter referred to as the trust, which is a Massachusetts voluntary association, created June 22, 1910, and subject to the provisions of the law of Massachusetts now contained in chapter 182, Massachusetts General Laws (Ter. Ed.). The trust is taxed as a corporation. The original corpus of the trust consisted of the real property mentioned below as distributed in partial liquidation, and other properties transferred to the trust by the recipients of shares of stock therefrom. On November 14, 1939, the trust made a partial liquidation of one of its principal assets, a parcel of real estate known as the "Phillips Building," located in Boston, Massachusetts.

The partial liquidation was effected by the execution, delivery, and recording on November 14, 1939. of a deed dated November 13, 1939, from the ten trustees of the trust to Henry C. Brookings, to the use of the several holders of shares or certificates of beneficial interest in the trust pro rata according to the number of shares held by each and in an exchange for the surrender to the said trustees for cancellation of one-half of the number of such shares then held by each of said beneficiaries.

The total number of shares of the trust outstanding immediately prior to the partial liquidation was 32,000, of which petitioner held 3,100 shares. Of the 16,000 shares surrendered in partial liquidation, this petitioner surrendered 1,550 shares for cancellation in exchange for the interests conveyed to her by the deed of November 13, 1939. For these shares the petitioner by said deed acquired a 155/1600 undivided interest in the property conveyed and transferred by the deed.

The property conveyed and transferred by the deed consisted of a parcel of about 16,407 square feet of land in the downtown retail shopping district of Boston. On November 13, 1939, this land had erected thereon a six-story brick and stone store and office building called the Phillips Building and numbered 120 Tremont Street.

The "said land and building was conveyed by said deed dated November 13, 1939, subject to a preexisting lease thereof made and executed by a predecessor sole trustee of [the trust] to F. W. Woolworth Company, a Pennsylvania Corporation, as lessor for a term of 30 years beginning September 1, 1923, and terminating August 31, 1953, and having an unexpired term, on November 14, 1939, of about 13 years, 9 months, 16 days; The lessor's interest in which lease was expressly assigned by said deed, together with the Lessor's interest under an Agreement of Guaranty duly executed by F. W. Woolworth Company, a New York Corporation, dated August 25, 1922, and annexed to said lease. This taxpayer received by said conveyance a

155/1600 interest in said land, buildings, lease and guaranty agreement."

Under the lease the tenant was obligated to pay for the unexpired balance of the term thereof a net rental of $130,000 per annum, payable in equal monthly installments plus the amount of municipal taxes assessed and to be assessed thereon during the term, and also the cost of insurance; plus an additional cash amount of $10,000 per annum during the last five years of the term, payable monthly.

The total cash rental to be paid over the balance of the unexpired term of the lease from and after November 14,1939, was $1,843,277, in addition to which the lessee was obligated to pay as rent the amount of taxes and insurance payable on the demised premises.

In her 1941 income tax return petitioner claimed depreciation on the building acquired by the partial liquidation in the amount of $640.15. This amount was computed on a basis of petitioner's share of a 1939 value of $165,000 for the building and a remaining life in 1939 of 25 years. The Commissioner allowed depreciation on the building in the sum of $601.48, computed on petitioner's share of a value of $103,480.52 for the building and a remaining life in 1941 of 16⅔ years, depreciated at a rate of 6 percent. The amount of depreciation allowed for the building is not in dispute.

In her 1939 return the petitioner, in reporting the partial liquidation, used a figure of $1,600,000 as representing a total value of the property distributed upon the liquidation. The same figure of $1,600,000 was used by the trust upon its information return, Form 996, filed pursuant to the liquidation. The Commissioner did not question the use of said valuation in petitioner's 1939 return.

On or before February 29, 1940, the property in question was appraised by two appraisers, who fixed a value for the land and buildings at $1,390,000. They valued the property without the existing lease at $500,000 and attributed the remainder of their appraised value to the earning power of the lease. The appraisal shows the assessed valuation of the property to be $1,293,000, allocated $1,184,500 to the land and $108,500 to the building. In determining the liquidating value of the land and building the Commissioner fixed the values at $1,496,519.48 and $103,480.52, respectively, based on an allowed value for liquidation purposes of $1,600,000.

The property in question was sold by the distributees during 1942 for a gross price of $1,275,000.

During the taxable year the petitioner (with the other tenants in common owning undivided interests in the Phillips Building) purchased policies of insurance upon or with respect to their interests in the Phillips Building at a cost to the petitioner of $1,601.15. The policies were each written for a term of three years. The petitioner's

tax returns are made and her books of record were kept on the cash receipts and disbursements basis. On a pro rata basis petitioner used or "exhausted" during the taxable year $353.39 of the cost of her insurance, which left at the end of the taxable year unexpired insurance that cost $1,247.76., The Commissioner disallowed the cost of this unexpired insurance as a deduction for 1941.

The expense of purchasing and carrying insurance of the kinds represented by the policies purchased by or for account of the taxpayer and others, as aforesaid, was to this taxpayer an ordinary and necessary business expense of a kind properly deductible under section 23 of the Internal Revenue Code. The purchase of such insurance on policies for three-year terms was customary and usual and less expensive than if the same coverage were purchased on policies bought on a yearly basis. Each policy unexpired at the end of the taxable year had a substantial time to run and a substantial surrender value.

The asset acquired by petitioner in November 1939 was an undivided interest in real property then under lease. As an incident thereto petitioner acquired the right to receive her pro rata portion of the lease rentals. Such right was not separately valued by the parties, nor was the right to receive excess rentals separately acquired as an exhaustible asset.

The first issue is whether petitioner is entitled to a deduction for exhaustion of the cost of "excess rentals." Petitioner contends that she purchased the right to receive her pro rata share of the rentals over the unexpired term of the lease by surrendering one-half of her shares in the trust; that the right to receive a pro rata share of the rentals was a property right in the nature of a wasting asset which she acquired at the same time she acquired her undivided interests in the land and building; and that section 23 (1) of the code authorizes the deduction for exhaustion, since it provides that in computing net income "there *shall* be allowed as deductions * * * (1) * * * a reasonable allowance for the exhaustion, wear, and tear * * *" (1) of property used in the trade or business, or (2) of property held for the production of income. (Emphasis supplied.) She points out that it is manifest under the stipulated facts that her interest in the lease constituted "property" within the meaning of section 23 (1) and that this property is a wasting asset. This being true, she would apportion the cost basis of $1,600,000 for the entire property at November 14, 1939, between building, land, and lease or excess rentals as follows: Building, $165,000; land, $544,049.34; and lease or excess rentals, $890,950.66. She supports the lease or excess rental apportionment by a written appraisal made by two appraisers, which respondent accepted as a fair and accurate summary of the facts and opinions to which the appraisers would testify if called as witnesses.

Petitioner's argument is not convincing. After the sole trustee of the trust leased the Phillips property to Woolworth in 1923 the fee owner had the reversion and Woolworth the leasehold estate. The fee owner had no capital investment in the lease; the trust simply carved an estate for years out of its fee for the considerations stated in the lease. So long as the fee owner continued to hold the reversion and made no assignment of the rents, the owner's right to lease rentals could not be questioned, nor would it be entitled to any deduction for exhaustion thereof. In 1939, when the reversion was conveyed to the petitioner and the other beneficiaries, not only did the owner of the reversion make no reservation of the lease rentals, but it assigned by the deed its interest as lessor in the lease and the agreement of guaranty. In Massachusetts, and generally, the rule seems to be well established that in a conveyance of real property by deed, which property is under a lease for years, the grantee takes such estate as his grantor had, namely, a reversion. "But the rent is incident to the reversion and passes with it, and the grantee or mortgagee, by force of the conveyance, has a right to receive all rent accruing upon the estate; it is a part of the realty and passes by the deed." *Burden* v. *Thayer*, 3 Met. (Mass.) 76, 78; 44 Mass. Reports 76; see also note to *Glidden* v. *Second Avenue Investment Co.*, 125 Minn. 471; 147 N. W. 658, in "L. R. A. 1915C," p. 190, 32 American Jurisprudence 104; 35 C. J. 1214.

In our opinion, when this petitioner acquired her undivided interest in the reversion she acquired as an incident thereof the right to receive her pro rata share of the rent from the tenant. She did not acquire as a separate and distinct item of property the right to receive rental income; she acquired this right as a part of the bundle of rights incident to ownership of the fee. This right of ownership and all other rights of a fee owner were subject to the outstanding leasehold estate, and were acquired by the beneficiaries at a value not here in dispute. The subject matter of the conveyance was all the rights, i. e., the entire interest of the grantor, and no attempt was made to separately value each of the various rights and incidents of ownership possessed by the holder of the fee either before or after the conveyance. But petitioner now seeks to have us determine, and hold, that the right to receive lease rentals was not an incident of the ownership of the fee, but was a separate property right which was transferred by the conveyance and had a value for tax purposes in excess of $890,000, based upon the appraisal aforementioned. Since we are convinced that the right to receive income from the tenant is a part of the realty and passed by the deed of conveyance, it is immaterial whether the lease was advantageous or detrimental to the fee owner. If advantageous, as the evidence here indicates, the value of the property as a whole would be increased; if detrimental, the value would be depressed.

In any event we do not think that the play of economic forces, or the results of fortuitous or unfortunate circumstances, constitutes legal justification for separately valuing one of the rights and incidents of ownership possessed by the holder of the fee, especially in view of the fact that the record is wholly devoid of any evidence that lessor's interest in the lease, including the right to receive rentals, was purchased as a separate item of property, that it cost petitioner over $890,000, or that any value separate and apart from the fee was placed thereon at the time of the conveyance. And even if we were convinced that a value should be separately ascribed to this one right and incident of ownership of property, which we are not, we could not agree with petitioner that all value over and above the value of the land and buildings should be allocated to this right to receive income. There are other rights and incidents of ownership that have value which can not be overlooked. The tenant's covenants to insure, to pay taxes, and to do or perform other covenants for the benefit of the fee owner were important considerations in the total valuation and should be separately valued if any allocation of the value of the whole is to be made to the various parts. No attempt was made by petitioner to value these property rights, and without them the right to receive rental income would be less valuable.

We have found no case precisely in point, nor have counsel referred us to any. The case of *Friend* v. *Commissioner* (C. C. A., 7th Cir.), 119 Fed. (2d) 959, affirming 40 B. T. A. 768, more nearly approximates the present facts than any other published report. There, the decedent leased properties prior to his death. Upon his death the petitioners (trustees of a testamentary trust) contended that they acquired two separate estates in the properties—the leaseholds and the reversionary estate—and that the leases had a value in excess of the naked fee simple which was exhaustible. The petitioners there conceded that the decedent had no exhaustible right, but argued that by reason of his death they acquired the right to receive the rents under the leases as items of substantial value, which were taxed for estate tax purposes, thereby fixing a cost to them which they should be permitted to amortize. The court held the petitioners' theory untenable.

Petitioner here derives comfort from the *Friend* decision because the Seventh Circuit, in the course of its opinion, stated that depreciation allowances, when permitted, are deductible by the entity that acquired the asset at some "cost," meaning capital expenditure, or other valuable consideration. But there, as petitioner recognizes in her brief, the court did not have before it the value of the lessor's interest in the leases as separate items of property. Nor do we have before us here the lessor's interest as a separate item of property. We have merely an effort to prove that the capitalized value of the excess rentals over

the unexpired term of the lease was in excess of $890,000. Based thereon, we are asked to allocate this sum to the lessor's interest as though this separate amount was paid therefor. This we are unwilling to do, and on this issue we sustain the respondent.

The second issue must also be decided against the petitioner. In *Higginbotham-Bailey-Logan Co.*, 8 B. T. A. 566, 577, we stated:

> The payment in advance of premiums for insurance results in the creation of an asset, since the policy has a surrender value. The asset value is exhausted ratably over the term for which the premium is paid. In the balance sheet such items are often carried as assets under such terms as prepaid insurance or prepaid expense.

The Board continued to follow this treatment of prepaid insurance despite the decision in *Welch* v. *DeBlois* (C. C. A., 1st Cir.), 94 Fed. (2d) 842, which held such expenditures to be deductible as an ordinary and necessary business expense of the year in which paid by a taxpayer on the cash receipts and disbursement basis. *George S. Jephson*, 37 B. T. A. 1117. In its more recent decision, *Commissioner* v. *Boylston Market Association* (C. C. A., 1st Cir.), 131 Fed. (2d) 966, affirming B. T. A. memorandum opinion, the Circuit Court held prepaid insurance should be amortized over the life of the insurance and not deducted as an expense of the year in which the premiums were paid. We see no point in trying to reconcile the two cases, as petitioner would have us do, in view of the court's statement in the *Boylston* case as follows: "We are, therefore, of the opinion that *Welch* v. *DeBlois*, supra, is incorrect and should be overruled."

*Decision will be entered for the respondent.*