MARY YOUNG MOORE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 17207, 19383.     Promulgated December 21, 1950.

*Melvin D. Wilson, Esq.,* for the petitioner.
*Robert H. Kinderman, Esq.,* for the respondent.

**OPINION.**

RICE, *Judge:* The issue to be decided is whether petitioner should be allowed a deduction for depreciation on the half interest in the building which she inherited from her mother. To be allowed a depreciation deduction under section 23 (1) of the Internal Revenue Code, the taxpayer must have an investment or depreciable interest in the property upon which he claims depreciation. *Detroit Edison Co.* v. *Commissioner*, 319 U. S. 98. Where the property for which depreciation is claimed has been placed upon the land by the lessee, the lessor generally is not allowed to deduct depreciation, for the reason that he has no investment or cost therein which is subject to exhaustion. *Reisinger* v. *Commissioner* (CA-2), 144 Fed. (2d) 475.

Section 23 (1) also provides that where property is held for life by one person with the remainder to another, depreciation shall be taken by the life tenant as if he were the absolutè owner of the property. In the recent decision of *First National Bank of Kansas City* v. *Nee*, 85 Fed. Supp. 840 (August 1949) [1], the court read the life-tenant provision omitting the word "life" and held it would apply to a situation in which a person inherited property subject to a long term lease under

---

[1] Same case, written memorandum opinion on sundry motions, August 11, 1950, 92 Fed. Supp. 328.

which the lessee had erected a building. The legislative history[2] indicates that this part of the subsection was intended to apply only to a life tenant-remainderman relationship and not to the relationship of lessor-lessee. In the case of inherited property under section 113 (a) (5) of the Internal Revenue Code, the basis is the fair market value "of the interest in the land and the building which he acquired by devise on the death of the decedent." *Bueltermann* v. *United States*, 155 Fed. (2d) 597, 601. Therefore, by statutory interpretation of applicable sections of the Internal Revenue Code respondent's contention that petitioner has no depreciable interest in the property is untenable in this situation.[3]

Petitioner has cited *Charles Bertram Currier*, 7 T. C. 980, in support of her contention that she has a depreciable interest in the property. In that case, under closely similar facts we said:

* * * The basis of inherited property is accordingly not cost, as it was in the *Detroit Edison* and *Reisinger* cases, and to say that a property cost the taxpayer nothing makes no contribution to the solution of the present question. As opposed to cost, the basis of property acquired by devise is categorically fixed by statute as fair market value on the date of acquisition. Internal Revenue Code, sec. 113 (a) (5). Hence, if we can discover the fair market value of the property in question at the date of decedent's death, *Augustus* v. *Commissioner* (C. C. A., 6th Cir.), 118 Fed. (2d) 88, (or the figure at which it was returned for estate tax purposes, which is recognized as the equivalent, Regulations 103, sec. 19.113 (a) (5)) the upshot would ordinarily be its basis for depreciation in petitioner's hands, without any reference to its "cost." Having acquired a basis by the incidence of the estate tax, the gradually disappearing value of a wasting asset can not be replaced except by periodic depreciation adjustments. (p. 984.)

This holding was followed in *J. Charles Pearson, Jr.*, 13 T. C. 851, under facts even more closely paralleling those of this case than did the facts of the *Currier* case. In the *Pearson* case, petitioner inherited an interest in property which had outstanding a long term lease. Prior to decedent's death, the lessee at his own expense had erected a building whose life was less than the term of the lease. The lessee was obligated, upon expiration of the lease, to yield up the building, wear and tear excepted, in a good tenantable condition. The lessee, during the years in question (1942 through 1945), claimed depreciation on the cost of the building on the basis of a 50-year life, which

---

[2] H. Conf. Rept. No. 1882, 70th Cong., 1st Sess. (1928), p. 11:

Under existing law difficulty has been experienced in determining and allowing the deduction for depreciation in cases where property is held by one person for life with remainder to another person; and the deduction, in the case of property held in trust, is allowable only to the trustee. The Senate amendment provides that a life tenant, for the purpose of this deduction, shall be considered as the absolute owner; so that he will be entitled to the deduction during his life, and that thereafter the deduction, if any, will be allowed to the remainder man. * * *

[3] Section 23 (n) provides that the basis for deprication shall be the one provided in section 114 (a) which states the basis for depreciation "shall be the adjusted basis provided in section 113 (b) for the purpose of determining gain upon the sale or other disposition of the property." Section 113 (b) in turn provides that the adjusted basis "shall be the basis determined under subsection (a)" with certain adjustments thereafter stated."

depreciation was allowed by the respondent. In that case, we allowed petitioner depreciation with a basis of the fair market value of the building at the time the interest was acquired by inheritance.

The principal distinction between the *Pearson* case and this case is that in the former the outstanding lease was unfavorable to the lessor, while in this case we have a lease which is favorable to the lessor. In the *Pearson* case, the fair market value of the building at the time of decedent's death was stipulated by the parties, whereas here we have had to determine that fact.

Respondent, in his brief, argues that even should we find that petitioner has a basis in the Barker Bros. Building, she is not entitled to any allowance for depreciation. The only reason advanced for this view which needs any consideration is one arising out of the provisions of the sublease. Section 6 of the sublease provides, among other things, that "the sub-lessee agrees, at its own cost and expense, to make any and all repairs and do all things that may be necessary to put and continuously keep the sub-leased premises and appurtenances thereto and equipment therein, at all times during the term of this sub-lease in as good condition as when received by it from the sub-lessor * * *." Since the building was new when received by the sublessee. the respondent contends that the sublessee must return a new building upon expiration of the lease.

However, other provisions of the sublease and of the lease indicate that there was no intention that a new building had to be returned to the lessor at the expiration of the term. Another portion of section 6 of the sublease allowed the sublessee to make additions, changes or improvements in the premises if permitted by the senior lease, provided the change would not depreciate the value of the building, affect the structural strength, or exceed a cost of $25,000. Changes costing more needed the consent of the sublessor. Section 18 of the sublease provided that the sublessee would insure the buildings against injury by fire or earthquake, and further, that if such injuries occurred during the last 10 years of the term the sublessor would have an option to cancel and terminate the sublease and receive the insurance due to the damages. The senior lease provided in section 9 that if the building was seriously damaged or destroyed during the last 10 years of the term the lessee had an option either to repair it or turn over insurance proceeds to the lessor. Section 14 of the senior lease provided that all improvements and fixtures, other than trade fixtures, placed upon the property "shall at all times be and remain the property of the lessors * * *." Since by section 23 of the lease only in the case of destruction by earthquake or fire more than 10 years prior to the expiration of the term of the lease was it necessary for the lessee to repair or rebuild the structure, and from the reading of the lease and

the sublease as a whole, we hold that there was no obligation to return a new building to petitioner at the end of the term.

In view of the foregoing, we hold that petitioner will suffer some loss due to depreciation and some deduction for this loss must be permitted.

We.have found that the fair market value of a half interest in the Barker Bros. Building on November 3, 1938, was $800,000. Petitioner's expert witnesses determined the value of the land and the Barker Bros. Building on decedent's death, and arrived at a figure which was some $330,000 less than the stipulated value of the land plus the building on that date. This amount they felt was allocable to the lease, since the lease was an extremely favorable one to the lessor. Consideration was given to petitioner's arguments that this so-called value of the lease should be apportioned between the land and building, or, in the alternative, that it is a separate capital asset which she is entitled to amortize. Petitioner's arguments are not convincing.

In the case of *Milton H. Friend*, 40 B. T. A. 768, affd., 119 Fed. (2d) 959, certiorari denied, 314 U. S. 673, a somewhat related theory was advanced by the taxpayer. There, decedent, prior to his death, leased certain properties upon which the lessees erected buildings at their own expense. Petitioners, trustees of the testamentary trust, claimed the right to deduct from the gross rentals amortization of the capitalized values of the rents to be received under the leases. We held that petitioners were not entitled to such deductions, since "the mere fact that the property was advantageously rented at the date of the death of the decedent does not in our opinion give rise to any claim for an allowance for exhaustion." (p. 772.)

This theory was approved in *Martha R. Peters*, 4 T. C. 1236. In that case, petitioner acquired, through the partial liquidation of a Massachusetts voluntary association, an undivided interest in certain realty then under lease. We held that the right to receive rent under the lease is acquired as an incident to ownership of the fee, and that the difference between the total rentals payable under the unexpired term of the lease and the estimated fair rental value for the term was not amortizable over the. remaining life of the lease. We said:

* * * But petitioner now seeks to have us determine, and hold, that the right to receive lease rentals was not an incident of the ownership of the fee, but was a separate property right which was transferred by the conveyance and had a value for tax purposes in excess of $890,000, based upon the appraisal aforementioned. Since we are convinced that the right to receive income from the tenant is a part of the realty and passed by the deed of conveyance, it is immaterial whether the lease was advantageous or detrimental to the fee owner. If advantageous, as the evidence here indicates, the value of the property as a whole would be increased; if detrimental, the value would be depressed. (p. 1240.)

Here, as in the *Peters* case, we are not concerned with the value of the lessor's interest in the lease as a separate item of property. What petitioner inherited from her mother was an undivided half interest in the land under the Barker Bros. Building and a reversionary interest in the building. Petitioner has attempted to separate the right to receive rent from the bundle of rights possessed by the holder of the fee. The right to receive rent under the lease to which the land was subject at the time of her mother's death was merely incident to the ownership of the fee. The lease grew out of the land, is reflected in the value of the land, and it neither constitutes a separate capital asset, nor increases the value of the building.

For these reasons we hold that petitioner is neither entitled to amortization of the leasehold, nor to include any so-called lease value in the value of the building, but, as heretofore found, is entitled to depreciation on the building.

*Decision will be entered under Rule 50.*