FRIEDA BERNSTEIN, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Dockets Nos. 36079–36082.    Filed August 31, 1954.

*Herman Jaffe, C. P. A.*, for the petitioners.
*John J. Madden, Esq.*, for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: Rose Bernstein, Docket No. 36080; Abraham Bernstein and Frieda Bernstein, Docket No. 36081; and Herman Bernstein and Rose Bernstein, Docket No. 36082.

OPINION.

FISHER, *Judge:* Petitioners Frieda and Rose Bernstein formed a partnership on February 1, 1945, for the purpose of owning and

operating real estate. Thereafter on March 23, 1945, they acquired a piece of real estate known as No. 73–79½ Maiden Lane and No. 9–11 Gold Street in New York City. This property became an asset of the partnership. The history of the particular piece of real estate is pertinent to the instant case and is set out briefly below.

On May 1, 1919, this property, which was then owned by members of the Wendel family, was leased to the 75 Maiden Lane Corporation. The lease was for a period of 21 years and required the landlords to grant 2 renewals of 21 years each. It provided for a net rental of $26,000 per year (except for the first year). The annual net rental for the first 21-year renewal was to be 5 per cent of the full value of the land (as determined by a method set out in the lease) at the expiration of the first lease, but in no event less than $26,000. The annual net rental for the second renewal was to be determined in the same manner as that of the first renewal, but in no event was it to be less than the rental fixed for the latter.

The lease also provided that the tenant, after demolishing existing buildings, was to construct buildings of certain characteristics on the property within 5 years after the execution of the lease, and that at the expiration of the last term for which the lease might be renewed (or other sooner termination of the lease), title to the buildings "shall vest in the landlords."

Pursuant to the terms of the lease, the tenant demolished the buildings then standing on the property and erected a 12-story, fireproof, commercial office building which is now known as the Perrin Building. On May 1, 1940, at the end of the first term of the lease, the lease was renewed for an additional 21 years.

At some time subsequent to the execution of the lease, the Wendels conveyed the fee to the Wendel Foundation which in turn conveyed it to the Goldlane Realty Corporation on February 2, 1945. Also on that day, the Goldlane company conveyed the property to Columbia Homes Corporation which in turn, on March 23, 1945, conveyed it to the partners, petitioners Frieda and Rose Bernstein. All of these conveyances were subject to the leasehold interest of the 75 Maiden Lane Corporation.

It appears from the statutory notices of deficiency (copies of which were filed with the respective petitions to this Court) that the partnership return for the taxable year ending January 31, 1946, claimed a deduction of $8,036.24 for "amortization of leasehold value," and that for each of the taxable years 1947 and 1948 claimed a deduction of $10,596.76 for "depreciation of buildings and improvements." These deductions were reflected in the individual income tax returns filed by petitioners Frieda and Rose Bernstein for the years 1946 and 1947, and in the joint returns filed by each of the married couples for the year 1948. The respondent disallowed the deductions for each year

on the ground that the partnership was not entitled to deductions for amortization of leasehold value or for depreciation on buildings and improvements under the provisions of section 23 (1) of the Internal Revenue Code of 1939.

For the reasons set forth below, we must hold that there is nothing in the record properly before us for consideration upon which we may find that petitioners are entitled to deductions either for depreciation or for amortization of leasehold value or premiums.

We consider first the question of depreciation. As a foundation for a discussion of the question of whether or not during the existence of the lease (including the taxable years here involved) any depreciation is allowable to the owner or lessor with respect to improvements erected at the expense of the lessee, petitioners must first establish, under the principles announced in *Commissioner* v. *Moore*, (C. A. 9) 207 F. 2d 265, certiorari denied 347 U. S. 942, and *Albert L. Rowan*, 22 T. C. 865, a depreciable interest in the improvements, *subject to the lease.* This includes proof of a depreciable basis for the improvements, subject to the lease, as well as the extent, if any, to which the probable life of the improvements will extend beyond the termination of the lease.

Petitioners' position appears to be based upon the assumption that, if proportionate values may be allocated to land on the one hand and improvements on the other, a basis for allowance of depreciation on the improvements may be established by applying the resulting ratios to the original cost of the whole. In taking the above position, however, petitioners appear to have ignored the essential factor that their interest in the improvements is solely one which has been variously described as subject to the lease, or a reversionary interest, or a right to possess the improvements at the termination of the lease (all three expressions being utilized in *Commissioner* v. *Moore*, *supra*).

It is clear from the record that whatever may have been petitioners' cost in purchasing the entire property (including such interest as they may have acquired in the improvements), there is no evidence of any specific allocation of such cost as between land and either improvements or petitioners' interest in such improvements. Petitioners seek to establish a basis for allocation by introducing into evidence assessments by the taxing authorities of the City of New York establishing, for local tax purposes, separate assessed values for land and improvements. Whether or not the evidence of the separate assessments for local tax purposes may have probative value for the general purposes of allocation of basis between land and improvements, such evidence is of no significance in the instant case because it is based upon the value of the land and the full value of the improvements without giving effect to the fact that petitioners' interest is subject to the lease.

In *Commissioner* v. *Moore*, *supra*, in disposing of a like issue, Judge Pope made the following comments:

The proof of values offered on behalf of the taxpayer ignored the difference between a building unaffected by a lease, and a building subject to a lease. [207 F. 2d, at p. 269.]

If those who did the stipulating * * * considered that the * * * interest was one in a building *subject to a lease*, they may have attached little or no value to the interest in the building. [207 F. 2d, at p. 270.]

It is thus apparent that the testimony of the witnesses, * * * based upon the value of the building alone, viewed as a physical structure, do not reflect the taxpayer's true interest in that building, as that interest is, in fact, affected by a lease whose term exceeds the useful life of the building. [207 F. 2d, at p. 271.]

Since there is no evidence, other than that already discussed, upon which we may determine a basis for depreciation of petitioners' interest in the improvements, it is apparent that petitioners have failed to establish an essential element of their claim for allowance of depreciation.

We also find that there is no evidence (and nothing in the stipulation of facts) demonstrating the extent, if any, by which the probable life of the improvements may exceed the period of the lease.

In the light of the principles established in *Commissioner* v. *Moore*, *supra*, and *Albert L. Rowan*, *supra*, and in the absence of essential proof as indicated by the foregoing analysis, we must hold that petitioners have failed to establish the right to an allowance for depreciation for any of the years in question.

We now consider whether petitioners have established the right to any allowance for "amortization of leasehold value." In *Commissioner* v. *Moore*, *supra*, the court recognized the principle that if property is purchased subject to a pre-existing lease, and if, at the time of such purchase, the rentals provided for in the lease were greater than could have been obtained had the lease been negotiated at the time of purchase, such a lease has a "premium" value, and if such premium value (attributable to such favorable rentals) is subject to ultimate exhaustion, the premium value should be amortized through annual deductions allowable to the acquiring lessor.

Assuming, *arguendo*, the validity of the principle so announced (although we are not called upon, for the reasons hereinafter set forth, to accept or reject it in this case), we are nevertheless unable to hold, upon the facts, that petitioners are entitled to an allowance for amortization of any premium value. There is no evidence (and nothing in the stipulation of facts) upon the basis of which the existence or amount of any such premium value may be ascertained. No facts are presented as to whether the rentals are favorable or

unfavorable within the conception under discussion, and no standard of measurement or calculation is suggested.

We add that while petitioners did not formally abandon the issue of amortization of leasehold premium value, the point is not pressed in the briefs filed on their behalf.

Petitioners have not assigned error in relation to other adjustments made in the statutory notices of deficiency.

*Decisions will be entered for the respondent.*