ROSALIE M. SCHUBERT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 70793. Filed March 23, 1960.

*Leroy B. Cohen, Esq.*, and *John F. Kelly, Esq.*, for the petitioner.
*Charles B. Norris, Esq.*, for the respondent.

MULRONEY, *Judge:* The respondent determined deficiencies in petitioner's income tax for the years 1953, 1954, and 1955 in the amounts of $672.63, $2,938.13, and $2,782.92, respectively.

Petitioner is the beneficiary of a testamentary trust and thus required to report trust income distributed or distributable to her, including rents from land decedent had leased on a long-term lease, and on which the lessee had built a building. The questions are:

(1) Whether, in reporting such rents, petitioner is entitled to a deduction for depreciation during the years before the Court;

(2) Whether petition is entitled to amortize any premium value of the lease, and

(3) Whether any deficiency for the year 1953 is barred by section 275(b), I.R.C. 1939.

### FINDINGS OF FACT.

Some of the facts have been stipulated and they are found accordingly.

Petitioner's mother, Gazelle K. Millhiser, owned certain real estate in the business section of Richmond, Virginia. On October 2, 1941, she leased this property, described as 409 East Broad Street, to G. C. Murphy Company. This property was located about 61.36 feet from the intersection of Broad and Fourth Streets and it consisted of a frontage on Broad Street of 19.04 feet with a depth of 138 feet to an alley in the rear. At about the time of the execution of the above lease, G. C. Murphy Company entered into two other leases with the owners of adjacent property extending to the corner of Fourth and Broad Streets and to the rear fronting on Fourth Street. The three leases were all for a term ending in each case on January 31, 1973, and they permitted G. C. Murphy Company to demolish the buildings on the three properties, use or sell the salvage materials, and put up one building on the three parcels in accordance with certain plans and specifications.

The leasehold period of the Millhiser lease began November 1, 1944,[1] and it provided for monthly rental thereafter of $1,000 per month through January 1948, $1,145.83⅓ per month thereafter through January 1958 and $1,208.33⅓ per month thereafter through January 1973. Some of the other provisions of the lease may be summarized as follows:

(a) The tenant was obligated to reimburse the lessor for all real estate taxes and charges against the property during the term in excess of $2,445.91 annually, that being the amount of such taxes for the year 1940.

(b) The tenant was obligated to reimburse the lessor each year for the cost of fire insurance on the building and improvements during the term in excess of $184.09 annually, that being the amount of such premiums for the year 1940.

(c) The tenant agreed in case of a new building being erected on the property by the tenant it would deliver up the same at the end of the term in as good order, repair, and condition as the same was in at the time of completion, ordinary wear and tear, and accidents by fire or other casualty excepted.

(d) The tenant agreed at the end of the term to erect individual walls along the boundary lines of the property, to restore separate water, sewer, and powerlines and other facilities so as to make the building upon the demised premises a separate rentable unit.

(e) The tenant agreed that any building constructed by the tenant should be unencumbered by any act of the tenant and should be and become the property of the lessor upon the termination of the lease.

(f) The tenant agreed to make all exterior and interior repairs during the term.

On or about May 1, 1947, demolition of the existing improvements was begun by the G. C. Murphy Company and was immediately followed by construction of one department store building on all of the several demised properties. This building, consisting of a basement and five stories, was completed on or about July 1, 1948, at a total cost of $1,442,969. The estimated useful life of the building is 50 years from July 1, 1948.

The estimated cost of the building insofar as it was constructed on Gazelle K. Millhiser's property was from $150,000 to $180,000 and it was borne by the tenant, except to the extent of any salvage value recovered by the tenant from the demolished building thereon.

The cost to Gazelle K. Millhiser of the improvements upon the demised property at the time of their demolition on May 1, 1947, after depreciation was $6,200. She claimed for income tax purposes on account of depreciation of the demolished improvements a deduc-

---

[1] The three properties had existing leases on them in 1941, the longest of which expired in 1944.

tion at the rate of $240.77 annually from May 1, 1947, until her death.

Gazelle K. Millhiser died on August 31, 1953, while a resident of the city and State of New York, and her will was duly admitted to probate in the Surrogate's Court of the County of New York on September 14, 1953. The will nominated decedent's son, E. Ross Millhiser, as executor and directed that the residue of the estate, after gifts of tangible personal property, be divided into two parts, one of which was $275,000 greater than the other. The larger of the two parts was devised and bequeathed to E. Ross Millhiser as trustee, for the benefit of petitioner for life (the net annual income to be paid to her in quarterly or more frequent installments) and remainder to her children, with authority in the trustee, "in his uncontrolled discretion" to pay principal for the benefit of the life beneficiary or her children. In dividing the estate the executor was authorized to allocate assets in kind at the value of such assets as of the date of testator's death.

E. Ross Millhiser qualified as executor and trustee under said will and it is stipulated here that pursuant to the authority conferred upon him by the will the executor allotted the real property known as 409 East Broad Street, Richmond, Virginia, to that part of the residuary estate devised and bequeathed in trust for petitioner. In the Federal estate tax return the above property was described and appraised as follows:

No. 409 East Broad Street, Richmond, Virginia, approximately 19.2 feet by 142.5 feet upon which other property not owned by deceased a department store has been built. Current annual gross rental $13,750. Owner's share of annual real estate taxes $2,445.19. Of annual insurance premiums $184.09. Value based on appraisal $200,000.

The Federal estate tax was paid upon the above appraised value of $200,000. E. Ross Millhiser, as trustee, paid petitioner, who resides at the Hotel Surrey in New York, the annual income as computed by him since August 31, 1953. E. Ross Millhiser also, as petitioner's attorney in fact, filed income tax returns for petitioner for the years in question with the district director of internal revenue for the district of Virginia at Richmond. These returns report as income the net rents from 409 East Broad Street, which were computed by E. Ross Millhiser as trustee, as follows:

| | 1953 | 1954 | 1955 |
|---|---|---|---|
| Gross rents | $4,583.32 | $17,422.61 | $17,422.31 |
| Less: | | | |
| Real estate taxes | | 6,118.56 | 6,118.22 |
| Insurance | 7.54 | 12.32 | 93.59 |
| Commissions | 275.00 | 825.00 | 825.00 |
| Depreciation | 1,666.67 | 5,000.00 | 5,000.00 |
| Net rents | 2,634.11 | 5,466.73 | 5,385.50 |

Respondent disallowed the deductions for depreciation in the above computations of net income for the years in question thereby increasing the net income distributed and distributable to petitioner from the trust estate by $1,666.67 for the year 1953, $5,000 for the year 1954, and $5,000 for the year 1955. The above adjustment gives rise to the entire deficiency determined in respondent's notice of deficiency.

OPINION.

In *Albert L. Rowan*, 22 T.C. 865, the taxpayer inherited a one-third interest in property on which a building had been constructed by the lessee under a 66-year lease. We held the taxpayer was not entitled to a depreciation allowance on the building and our opinion reviews earlier opinions of this Court, *Mary Young Moore*, 15 T.C. 906; *Charles Pearson, Jr.*, 13 T.C. 851; and *Charles Bertram Currier*, 7 T.C. 980, where upon similar facts we had reached an opposite result. Our opinions in the *Moore* and *Pearson* cases had been reversed by the Ninth and Fifth Circuits (*Commissioner* v. *Moore*, 207 F. 2d 265, and *Commissioner* v. *Pearson*, 188 F. 2d 72) and in our *Rowan* opinion we stated that we were reexamining our position and we concluded that the cited opinions of the Fifth and Ninth Circuits in the *Pearson* and *Moore* cases "lay down the correct rule of law" and we specifically overruled our prior opinions in the *Moore*, *Pearson*, and *Currier* cases. The rule which we drew from the said Circuit Court decisions was stated in our *Rowan* opinion in the following language:

The effect of those decisions, as we understand them, especially the decision of the Ninth Circuit in reversing us in *Mary Young Moore, supra*, is to hold that in situations such as we have here where the term of the lease extended beyond the useful life of the building and where the taxpayer would not sustain any economic loss as the building wore out and could not sell her interest in the building apart from the land or the rentals, the value of her interest in the building was zero and she could not take depreciation on the building.

We applied the rule in the *Rowan* case, stating:

What Ellen Rowan was receiving at the time of her death was ground rental of $16,500. She was receiving no rental from the building; she had no investment in the building. Ground rental was all that the heirs of Ellen Rowan, including petitioner, received from the property. During the taxable years they were not receiving any rental income from the building itself. The rental income from the building was being received by the lessee who had erected the building on the leased land at his own expense. The lessee was the one to whom annual depreciation deductions on the cost of the building were properly granted. * * *

Petitioner argues the instant case is not within the rule of the *Rowan* case; that the case only holds no depreciation will be allowed when the term of the lease extended beyond the useful life of the

building. Here the term of the lease will not be expected to extend beyond the useful life of the building.

Any deduction for depreciation must be under section 23(1), I.R.C. 1939, and section 167, I.R.C. 1954. The statutes allow as a depreciation deduction, a "reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—(1) of property used in the trade or business, or (2) of property held for the production of income."

As stated in *Commissioner* v. *Moore, supra:*

The statutory allowance is available to him whose interest in the wasting asset is such that he would suffer an economic loss resulting from the deterioration and physical exhaustion as it takes place. * * *

Petitioner in the instant case had no interest in the building gained by her inheritance of the interest in the land plus the right of reversion at the end of the lease that would suffer an economic loss by reason of the physical wasting of the building during the 3 years in question.

In *Goelet* v. *United States*, (S.D. N.Y. 1958) 161 F. Supp. 305, it fairly appears that the useful life of the lessee constructed building would extend beyond the end of the lease. In denying the claim of the devisees of the lessor, for depreciation, the Court stated:

Plaintiffs inherited the fee subject to the lease, the right to receive the ground rentals reserved by the lease, and a reversionary interest in the building itself. Their interest in the building is restricted to a right to occupy it some 32 years after the crucial date in 1941. It is plain that such right suffers no diminution in value as a result of the passage of time; on the contrary, the value of the right must increase as the time for its actual enjoyment advances. This reversion is the only interest which plaintiffs have in the building as such; and as pointed out above, it is not depreciable.

Upon appeal to the United States Court of Appeals, Second Circuit, the above case was affirmed (266 F. 2d 881), the opinion rejecting the very contention here made that the case is distinguishable from such cases as *Commissioner* v. *Moore, supra*, and *Commissioner* v. *Pearson, supra*. The court then goes on to say:

Appellants fail to show how a depreciable interest in the building was supplied to them in the taxable years by the circumstance that prior to 1946, when the lease term was extended for an additional ten years, the estimated useful life of the building extended eight years beyond the original term of the lease. * * *

We hold respondent was right in disallowing the claimed deductions for depreciation.

Petitioner's alternative argument is that she should be allowed a deduction in the tax years representing the amortization of the capitalized value of what is to be considered a favorable lease. This argument is based upon the proposition that the lease is a separable property interest which is to be valued separately at the date of

lessor's death and the difference between the high rentals being paid under the lease and those which could then be obtained in the market, sometimes called premium value, should be amortized over the remaining term of the lease.

We rejected the same argument here made in cases with similar facts in *Milton H. Friend et al., Trustees,* 40 B.T.A. 768, affd. 119 F. 2d 959 (C.A. 7, 1941), certiorari denied 314 U. S. 673, and *Mary Young Moore,* 15 T.C. 906, reversed on this point 207 F. 2d 265 (C.A. 9, 1953), certiorari denied 347 U. S. 942. In both cases we held that the difference between the total rentals payable under the unexpired term of the lease and the estimated fair rental value for the term was not amortizable over the remaining life of the lease. Cf. *Martha R. Peters,* 4 T.C. 1236. In our opinion in the *Moore* case, we cited our earlier opinion in *Milton H. Friend et al., Trustees, supra,* and the affirming opinion of the Seventh Circuit in that case, and stated:

What petitioner inherited from her mother was an undivided half interest in the land under the Barker Bros. Building and a reversionary interest in the building. Petitioner has attempted to separate the right to receive rent from the bundle of rights possessed by the holder of the fee. The right to receive rent under the lease to which the land was subject at the time of her mother's death was merely incident to the ownership of the fee. The lease grew out of the land, is reflected in the value of the land, and it neither constitutes a separate capital asset, nor increases the value of the building.

In the opinion of the Ninth Circuit in *Commissioner* v. *Moore, supra,* reversing our opinion in *Mary Young Moore, supra,* on this point, the Court noted its disagreement with the opinion of the Seventh Circuit in *Friend* v. *Commissioner, supra.*

It is conceded decedent could not amortize any favorable features of the lease during her lifetime. We see no justification for the separability of the favorable lease value from the many elements that determine the entire value of realty. It was apparently held in *Commissioner* v. *Moore, supra,* that there is no difference between a transfer by death or purchase; that the devisee of the land is to be considered a purchaser of the lease paying "a bonus or premium for the acquisition of the 'favorable' features of the lease," which he should be allowed to recover as his "investment" in the property by depreciating a portion of the rents he will receive over the remaining period of the lease.

If the purchaser would be entitled to isolate the lease from the fee and take deductions for the favorable portion of the lease, it means some of the rents reserved in the lease would escape ordinary income taxation altogether. This is so because the seller of favorably leased property is entitled to treat the sale as a single transaction or the sale of a single asset with the lease merged in the fee subject to capi-

tal gains treatment. If it is logical to say an amount of rent due under the lease, which is considered in excess of normal rent, can be deducted by the purchaser of the favorably leased realty, then it would be equally logical to say the seller should be forced to isolate this amount of rent due under the lease and take it into his ordinary income.

We think the sound solution is to treat the lease interest as merged into the fee. We have not detailed the testimony of the expert who first gave his opinion as to the value of the land, then his opinion as to the normal rental for the property on August 31, 1953. From these figures he arrived at a conclusion that the premium value of the lease on the date of decedent's death was $38,685. We hold that the fact, if it be a fact, that the property was advantageously rented at the date of decedent's death, does not give rise to any claim for deduction for amortization or depreciation of the capitalized value of excess rentals over what might be considered market rentals, on the date of decedent's death. In so holding we follow our opinion in *Milton H. Friend, supra,* and its affirmance by the Seventh Circuit in *Friend* v. *Commissioner, supra.*

Petitioner argues any deficiency for 1953 is barred by section 275(b), I.R.C. 1939, which provides, as follows:

SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION.

Except as provided in section 276—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(b) REQUEST FOR PROMPT ASSESSMENT.—In the case of income received during the lifetime of a decedent, or by his estate during the period of administration, or by a corporation, the tax shall be assessed, and any proceeding in court without assessment for the collection of such tax shall be begun, within eighteen months after written request therefor (filed after the return is made) by the executor, administrator, or other fiduciary representing the estate of such decedent, or by the corporation, but not after the expiration of three years after the return was filed. This subsection shall not apply in the case of a corporation unless—

(1) Such written request notifies the Commissioner that the corporation contemplates dissolution at or before the expiration of such 18 months' period; and

(2) The dissolution is in good faith begun before the expiration of such 18 months' period; and

(3) The dissolution is completed.

The executor made and filed with the Commissioner the written request for prompt assessment of income tax. The record does not show the date of the request. The executor was asked if any "assessment for the year 1953 [was] made within 18 months following that requested assessment or adjustment or any phase of it," and he answered "No." We do not know whether he meant an assessment against the estate or petitioner for 1953 income. At any rate, it is

clear the statute merely limits time for an assessment of income tax for income received by a decedent in his lifetime or by his estate during the period of administration. It does not limit the time of assessment of a deficiency in the individual return of a taxpayer.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

OPPER, *J.*, dissenting:

## I.

As I read the present opinion, the real problem involved is not discussed. It arises as a question of recovery of basis and the nearest approach to suggesting that there is any such difficulty, is the decision here of an issue—not before us—as to what depreciation may be deducted by an imaginary purchaser of improved real property who paid more for it than he would for vacant land even though he did not thereby acquire title to the improvement.

It is presumably being held, gratuitously it seems to me, that when the improvement finally becomes worthless, or the valuable lease covering it comes to an end, and the real property reverts to the unimproved value it would have had without the improvement and lease in the first place, the consequent loss must either be taken all in 1 year, or possibly, since the opinion is obscure as to this, that it may never be taken at all. No cases are cited for this treatment and the authorities seem to me to be to the contrary.

## II.

A somewhat similar situation was presented in *Millinery Center Building Corp.*, 21 T.C. 817. There, the purchaser of the fee happened to be the tenant who had constructed the building but whose cost thereof had been fully depreciated. In order, as it insisted, to rid itself of a burdensome lease, it purchased the fee with whatever rights its landlord might have in the building. In denying to it any deduction for depreciation or amortization, we said, as the present opinion says: "We think that the bundle of rights which petitioner acquired by its contract of purchase * * * was so inextricably entwined in the acquiring of the land as not to be separable therefrom." Six judges dissented. On appeal, the case was reversed (C.A. 2) 221 F. 2d 322. The Court of Appeals said, among other things:

Petitioner's main argument throughout this litigation has been that the difference between the purchase price of $2,100,000 and the unimproved value of the land, $660,000, namely the sum of $1,440,000, should be deductible * * *. [I]t suggested amortization of this amount over the unexpired term of the lease,

or its depreciation as an additional cost of acquiring the already fully depreciated building.

The Appellate Court refused to allow the deduction as an ordinary and necessary expense and pointed out that there, the lease having merged with the fee, there could be no amortization of it. But it said (p. 324):

But the dissent seems more in accord with the realities of this situation. The taxpayer in acquiring this fee bought not only a reversionary interest in the land itself, but also a reversionary interest in the building which under the lease it would have had to surrender to the landlord when its term expired. *A third-party purchaser of such a fee would be entitled to allocate part of its cost to the building and to depreciate it as such.* [Emphasis added.]

The case went to the United States Supreme Court (350 U.S. 456) which affirmed the reversal by the Court of Appeals, saying (p. 460, 461):

Petitioner's claim that it "owned" the building is based on a loose and misleading use of "owned." * * * It could make use of the building for the remainder of its economic life, but only on payment of the stated rent. * * * A complementary feature of the purchase of the lessor's interests in the land and building was the elimination of the obligation to pay rent on the improved land. *The purchase price presumably reflected this situation.* * * *

* * * Petitioner has acquired two assets—land and a building—whose use it will have for the remainder of their useful lives, and petitioner therefore cannot amortize the cost allocable to the acquisition of the wasting asset over the term of the extinguished lease.

Accordingly, we affirm the judgment * * * leaving to the Tax Court the allocation still to be made. [Emphasis added.]

It would seem to follow that if a third person rather than Millinery Center had purchased the fee, two other consequences would ensue. Its purpose for the purchase would not be like *Millinery Center* to eliminate a burdensome lease but to acquire the benefit of the collection of a favorable rental; and it could not be said, as it was in *Millinery Center*, that the lease having merged with the fee, no deduction for amortization of the lease would be permissible. Some method of compensating the purchaser for the excess payment, corresponding in the *Millinery Center* case to $1,440,000, would have to be found to reconcile the decision there with that in the *Millinery Center* case.

Another example is the case of *Bueltermann* v. *United States*, (C.A. 8) 155 F. 2d 597, upon which we relied in *Charles Bertram Currier*, 7 T.C. 980. There, land upon which the building did not then belong to the owner of the fee was inherited, and as the Court there notes (p. 600):

[F]or the purpose of the Federal estate tax the estate's interest in the land, *and in the building on the land,* the property in which taxpayer acquired a share by devise, was valued at $100,000. * * *

[A]n expert witness familiar with the land before the erection of the building testified that its value as vacant property at the time of the execution of the lease was $50,000. [Emphasis added.]

See also *Frieda Bernstein*, 22 T.C. 1146, affirmed per curiam (C.A. 2) 230 F. 2d 603.

## III.

When real property is acquired by devise it assumes a new basis in the hands of the devisee, consisting of fair market value at decedent's death and established primarily for estate tax purposes. Of course, this will ordinarily be different from decedent's basis, and what he could or could not recover would be quite different. But it is similar to the basis of cost established by an acquisition by purchase, and gain or loss on final disposition by the devisee, just as by the purchaser, will be measured by his own basis. This, as I read it, is what the Court of Appeals had in mind in *Commissioner* v. *Moore*, (C.A. 9) 207 F. 2d 265, reversing 15 T.C. 906, certiorari denied 347 U.S. 942.

Now it would be miraculous if, for estate tax purposes, respondent should value unimproved, unproductive land by the same formula as property producing a substantial net long-term income.[1] We know from petitioner's evidence that here, in fact, the values were different.[2]

The situation is brilliantly illustrated by the case of *Albert L. Rowan*, 22 T.C. 865, 870. There the Tax Court's findings were:

The fair market value of the * * * property * * * *without taking into consideration the outstanding lease* on the property was as follows:

Land _____ $300,000

\* \* \* \* \* \* \*

The fair market value of Ellen Rowan's [decedent's] entire interest in the * * * property on June 20, 1940 [the date of death], *that is to say including her interest in the land, building, and the lease, was $412,500. The Commissioner in arriving at this valuation for estate tax purposes * * * did so without ascribing any valuation to* [decedent's] *reversionary interest in the land and building at the end of the term of the lease. His valuation was based upon capitalizing the annual rental* * * * [Emphasis added.]

---

[1] In *Albert L. Rowan*, 22 T.C. 865, 873, we said: "It seems plain that in the instant case the Commissioner in valuing the interest of Ellen Rowan in the Gulf States Building property at $412,500 did so solely by capitalizing the ground rental of $16,500 at 4 per cent for the remaining term of the lease." This, of course, would have been an impossible procedure as to vacant and unproductive land.

[2] Of course, the question is purely theoretical in a specific case since it would be impossible to find an instance of two exactly identical pieces of real property, one improved and the other vacant. All that can be done is what was attempted here—a comparative valuation by an opinion witness.

# 1058

There was thus a difference between the bare land value [3] and decedent's interest, which of course the taxpayer in the *Rowan* case partly inherited, of $112,500.

This difference in value, which will disappear with the improvement and the lease when the real property reverts to its unimproved valuation, should be recovered over the life of one or the other. Otherwise what is really a return of basis will appear to be taxable income. The *Rowan* case was, however, probably decided correctly, since the present issue and the one raised in the *Moore* case was for some reason not there presented.

## IV.

We tried to meet this overall problem in *Charles Bertram Currier*, *supra*, where, for want of a better approach, a part of the devisee's basis was assumed to be in the building, even though he did not own it. In this we were mistaken, as witness the Courts of Appeals of the Fifth and Ninth Circuit, although in *Commissioner* v. *Pearson*, 188 F. 2d 72, reversing 13 T.C. 851, certiorari denied 342 U.S. 861, the Court of Appeals for the Fifth Circuit specifically refrained from repudiating the doctrine of the *Currier* case. But what is of real significance here is that the only other reversal, *Moore*, sought to solve the obvious problem by the very means which the present opinion rejects, namely, to incorporate in the total value some element for the lease itself which will eventually terminate and for which depreciation should accordingly be available. The problem has not been illuminated by the failure of the Supreme Court to grant certiorari in *Moore*, which appears to present an irreconcilable conflict with *Friend* v. *Commissioner*, (C.A. 7) 119 F. 2d 959, affirming 40 B.T.A. 768, certiorari denied 314 U.S. 673.

It seems to me to be of little consequence whether the asset being permitted to justify depreciation, or, if you prefer, amortization, is stated to be the interest in the building, the lease, or some other intangible which is either different or a combination of the two. The inescapable economic fact is that the estate tax was paid on a higher value because the property was improved and leased; that this differ-

---

[3] It is true that in *Commissioner* v. *Pearson,* (C.A. 5) 188 F. 2d 72, reversing 13 T.C. 851, certiorari denied 342 U.S. 861, which happened to involve the same property as *Rowan,* the Court assumed that the estate tax valuation was for the land only and that this is accepted in *Commissioner* v. *Moore* (C.A. 9) 207 F. 2d 265, where, referring to the *Pearson* case, the statement is made (p. 270):

It is true that under the facts of that case it appeared from the record that the sum of $412,500, fixed as the value of the ancestor's interest in the property for estate tax purposes, had been based upon the value of the land alone. *That fact made the case an easy one to decide.* [Emphasis added.]

But on the more amplified record in the *Rowan* case as detailed above these factual statements were—although understandably—in error. And in the *Pearson* case, had the valuation been based upon the value of the land alone, it would have been $300,000 and not $412,500.

ential will eventually disappear; and that some consideration must necessarily be given it.

There is a suggestion in *Pearson* that what has been said about a basis for gain or loss would not apply to this situation because we are concerned here with basis for depreciation. See *Bueltermann* v. *United States, supra.* This proposition, which also appears in *Friend* v. *Commissioner, supra,* is, we think, set at rest by the statement in *Commissioner* v. *Moore, supra* at 275:

> What we have said discloses that we do not agree with the quoted statement. We think that the court there failed to note that Sec. 114(a) provides that the basis for depreciation is the same basis provided in Sec. 113.

For the reason that in my opinion some consideration must be given to the excess value incorporated in the estate tax appraisal and that some depreciation thereon should be computed, I respectfully note my dissent.

DRENNEN, *J.,* agrees with this dissent.