*Decision will be entered under Rule 50.*

WORLD PUBLISHING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 72034.   Filed October 7, 1960.

*Barton H. Kuhns, Esq.*, for the petitioner.
*Ivan L. Onnen, Esq.*, for the respondent.

MULRONEY, *Judge:* Respondent determined deficiencies in the petitioner's income tax for the years 1952, 1953, and 1954 in the amounts of $18,087.04, $14,743.77, and $5,485.91, respectively. The issues are:

(1) Whether petitioner is entitled to a deduction for depreciation or amortization of any part of the purchase price of improved real estate which at the time of purchase was subject to a lease held by the lessee who constructed the improvement; and

(2) Whether petitioner is entitled to a deduction as an ordinary and necessary expense of fees paid in connection with an application for a television license, or whether such fees are a capital expenditure.

FINDINGS OF FACT.

World Publishing Company, hereinafter called the petitioner, is a corporation organized under the laws of the State of Nebraska with

its principal place of business in Omaha, Nebraska. Petitioner is owner and publisher of the Omaha World Herald. Petitioner is on a calendar year and keeps its books and files its Federal income tax returns on an accrual basis. Its Federal income tax returns for the years 1952, 1953, and 1954 were filed with the district director of internal revenue at Omaha, Nebraska.

On June 29, 1928, George Warren Smith, Inc., leased two lots owned by it in downtown Omaha to Farnam Realty Corporation for a period of 50 years commencing July 1, 1928, at the following annual net rentals:

| | |
|---|---|
| First 10 years | $25,000 |
| Second 10 years | 27,500 |
| Third 10 years | 30,000 |
| Fourth 10 years | 32,500 |
| Last 10 years | 27,500 |

The lease provided that the lessee, Farnam Realty Corporation, was to erect a building of at least six stories and costing not less than $250,000. The lease also provided that, "Any and all buildings erected on the said premises under covenants by, or permission granted, to the Lessee shall, at and upon the construction thereof, be and become a part of the realty and upon the termination of this lease, by the expiration of its term or by default or otherwise, any and all such buildings and improvements shall pass to and remain the property of the Lessor." Some of the other provisions of the lease were as follows:

(a) Lessee agreed to pay all taxes (except estate, inheritance, or income taxes) levied, imposed, or assessed upon the land or its improvements or "upon any interest of the Lessor or Lessee in or under this lease or which the Lessor shall be required to pay by reason of or on account of its interest in said land or improvements."

(b) Lessee agreed to obtain fire and tornado insurance on the building and that the loss on such insurance policies was to be payable to the lessor. Lessee also agreed to obtain insurance policies against damage to plate glass, against liability for damages to the public or tenants of the building, against boiler explosion and operation of other appliances, workmen's compensation, and any other reasonable insurance that the lessor might require.

(c) Lessee agreed, in the event of fire or other damage to the building, to restore and replace the building, or any part of it, at its own cost and expense. Lessee was, for the purpose of such restoration, entitled to the proceeds of all insurance policies, but if the damage occurred after July 1, 1958, the lessee was obligated to make the restoration only to the extent of any insurance proceeds received by it.

(d) Lessee agreed to keep the building in good condition and repair at its own cost and expense.

Farnam Realty Corporation, the lessee, erected a building on the leased lots. On January 4, 1950, the petitioner, for a total consideration of $700,000, purchased the lots owned by George Warren Smith, Inc., subject to the lease, "together with all the tenements, hereditaments and appurtenances thereunto belonging, and all the estate, right, title, interest, claim or demand whatsoever of the said George Warren Smith, Inc., of, in or to the same or any part thereof."

It is stipulated that the remaining useful life of the building in January 1950 was not greater than the unexpired term of the lease.

In its income tax returns for each of the years 1952, 1953, and 1954, the petitioner claimed a deduction for "Depreciation and Amortization" in the amount of $10,546.92, which was computed by charging off $300,000 of the purchase price over the remaining years of the lease, about 28½ years. Respondent disallowed these deductions, with the explanation in the notice of deficiency that "no part of the amount of $700,000.00 paid by you [petitioner] in 1950 to acquire real estate which was subject to a lease granted by the previous owner may be allocated to the building constructed by the lessee under the terms of the lease and, further, that no part of said purchase price may be allocated as a basis for annual amortization deductions."

During the year 1951 petitioner investigated the field of television and its economic prospects, and sought advice on the necessary steps in obtaining a television license. On April 16, 1952, petitioner entered into an agreement with Noran E. Kersta & Company and Frank E. Mullen & Associates, consultants in the radio and television field. Under the agreement the consultants were to "make the necessary studies and submit complete plans and reports to the World Publishing Company in connection with the application for a television broadcast license, such studies and reports to be submitted in sufficient time so that if accepted the World Publishing Company could file the necessary application with the FCC in Washington by July 1, 1952." For these services petitioner agreed to pay the consultants a fee of $10,000, less $1,500 which had already been paid to the Kersta organization.

The agreement further provided that, "If the recommendations and reports of Kersta and Mullen are accepted by the World Publishing Company, and the services of Kersta and Mullen are desired for subsequent activities in connection with putting the World Publishing Company in actual operation of a TV and/or radio station, it is agreed that an additional fee of $15,000 will be paid to Kersta and Mullen covering such services. * * *"

On May 15, 1952, the petitioner's board of directors adopted a resolution that petitioner file an application before July 1, 1952, with the Federal Communications Commission for a VHF television station.

Petitioner's articles of incorporation were amended on June 18, 1952, to permit it to form a wholly owned subsidiary, the Herald Corporation, to engage in the operation of a television station. The Herald Corporation was subsequently incorporated and all of its then-authorized capital stock in the amount of $1,250,000 was purchased by petitioner.

Under the April 1952 agreement, the consultants prepared all the necessary material for the television license application, which was filed with the Federal Communications Commission under date of June 20, 1952, in the name of the Herald Corporation. At the time the application was filed, it appeared that it would be 6 months or more before the Federal Communications Commission took any action on such application.

Petitioner made payments of fees to the consultants in the amounts of $2,500, $3,000, and $3,000 in May, June, and July 1952, respectively.

On December 15, 1952, the petitioner wrote as follows to the consultants:

At the time our application was prepared and submitted it was thought that the FCC would be taking action upon our application within at least six to nine months. It is our present understanding, however, that it is quite likely to be at least a year from now before our application comes on for hearing.

Under these circumstances our board would like to clear the company of any outstanding obligations in connection with procedures we have taken thus far. While it may not be necessary, since our agreement of April 16, 1952, seems to definitely contemplate that any further services by yourself or Mr. Mullen would be subject to further agreement at the time of acceptance of such services by the World Publishing Company, I thought it might be well to advise you of these circumstances, and to have a clear understanding that as of the present time no further obligations exist by reason of the agreement of April 16, 1952.

This understanding was confirmed by the consultants on December 31, 1952.

Petitioner then obtained professional services elsewhere for its television project. The original application for a television license of June 20, 1952, was amended on November 20, 1953, and again on February 5, 1954. The subsequent amended applications contained many changes from the original application, including the location of the transmitter, the location of the studios, and the program schedule. A hearing on the last amended application was subsequently held before a hearing examiner of the Federal Communications Commission, and as a result of such hearing a television license was granted to the Herald Corporation. At the time of the trial the Herald Corporation owned and operated a television station. Television licenses are granted for 3-year periods.

Petitioner claimed a deduction in its 1952 income tax return of $8,500 as an ordinary and necessary business expense. Respondent

disallowed this deduction with the explanation in the notice of deficiency that this amount represented a capital expenditure.

The first issue is whether petitioner is entitled to a deduction in 1952, 1953, and 1954 for depreciation or amortization of any part of the purchase price paid in 1950 for improved real estate subject to a lease. The lessee had constructed a building on such property in 1928 under a 50-year lease, and it has been stipulated that in 1950 the remaining useful life of the building was not greater than the unexpired term of the lease.

Petitioner's argument on brief is that the fair market value of the ground alone at the time of the purchase was $400,000; that the balance of the purchase price, or $300,000, represented either the fair market value of the building at that time or a "premium for the rental to be received"; and that "whether the $300,000.00 represents the value of the improvements, or whether it represents a premium paid for the right to receive rent in accordance with the provisions of the lease until July 1, 1978, it is clearly a wasting asset, and as such the taxpayer should be entitled to depreciate or amortize it until it is 'ultimately exhausted.'"

In *Rosalie M. Schubert*, 33 T.C. 1048, a similar issue was before this Court, and the same alternative arguments were made by the taxpayer in that case. We held that the taxpayer, who had inherited a one-third interest in property on which a building had been constructed by the lessee under a 66-year lease, was not entitled to depreciation deduction based upon the building, and further, was not entitled to a deduction representing the amortization of the capitalized value of a purported favorable lease.

We believe the *Schubert* case, where we reviewed at length the cases in this area, is controlling here. There are no distinguishing facts in the present case. It makes no difference that the property here was acquired by purchase while in the *Schubert* case the property was inherited. See *Commissioner* v. *Moore*, 207 F. 2d 265. In either event the statutory allowance for depreciation under section 23 (1) of the Internal Revenue Code of 1939 and section 167 of the Internal Revenue Code of 1954 is available to him whose interest in the wasting asset is such that he would suffer an economic loss by reason of the physical exhaustion as it occurs. Petitioner had no such interest in the building constructed by the lessee. The rental income from the building was received by the lessee who constructed the building on leased land and he was the one properly entitled to annual depreciation deductions on the building. See *Albert L. Rowan*, 22 T.C. 865.

Petitioner argues at length that it had title to the building under the lease which we have set out, in part, in our Findings of Fact. It is

not at all clear whether petitioner did have title to the building, but in any event it is not decisive of the issue before us. In *Commissioner* v. *Moore, supra*, the court said:

It is not the physical property itself, nor the title thereto, which alone entitles the owner to claim depreciation. The statutory allowance is available to him whose interest in the wasting asset is such that he would suffer an economic loss resulting from the deterioration and physical exhaustion as it takes place. Thus the lessee, obligated to make improvements, may recover his capital outlay by deductions for depreciation notwithstanding title to the improvements may be in the lessor. Helvering v. F. & R. Lazarus & Co., 308 U.S. 252, 254, 60 S. Ct. 209, 84 L. Ed. 226; Duffy v. Central R. Co., 268 U.S. 55, 45 S. Ct. 429, 69 L. Ed. 846; Treasury Reg. 111, Sec. 29.23(a) 10.[2] And also, where the lessor erects the improvements, (and has title to them), but where the lessee undertakes to make good the physical exhaustion as it takes place, the lessor may not make such a deduction. Georgia Ry. & Electric Co. v. Commissioner, 5 Cir., 77 F. 2d 897, certiorari denied 296 U.S. 601, 56 S. Ct. 117, 80 L. Ed 426; Commissioner of Internal Revenue v. Terre Haute Electric Co., 7 Cir., 67 F. 2d 697, certiorari denied 292 U.S. 624, 54 S. Ct. 629, 78 L. Ed. 1479. * * * [Footnote 2 omitted.]

We hold that petitioner is not entitled to a deduction for depreciation based on the lessee-constructed building. *Goelet* v. *United States*, 266 F. 2d 881; *Commissioner* v. *Moore, supra; Commissioner* v. *Pearson*, 188 F. 2d 72; *Rosalie M. Schubert, supra; Albert L. Rowan, supra.*

We also hold that petitioner is not entitled to a deduction for amortization of a purported premium paid for the right to receive rent. Apparently this alleged premium is valued at $300,000. We rejected this same argument in *Milton H. Friend, et al., Trustees*, 40 B.T.A. 768, affd. 119 F. 2d 959 (C.A. 7, 1941), certiorari denied 314 U.S. 673; *Mary Young Moore*, 15 T.C. 906, reversed on this point 207 F. 2d 265 (C.A. 9, 1953), certiorari denied 347 U.S. 942; and in *Rosalie M. Schubert, supra.* We believe the same considerations set forth in the *Schubert* case apply here as well.

The next issue is whether petitioner is entitled to deduct in 1952 as an ordinary and necessary business expense the amount of $8,500 paid by it to television consultants for work done by them in 1952 in connection with petitioner's application for a television license. At the outset, we have doubts as to whether these expenditures, looking toward a television license, can be said to have been made in carrying on petitioner's business, which was the ownership and publication of a newspaper. See *Radio Station WBIR, Inc.*, 31 T.C. 803, 812. Moreover, the television license application, when first filed in June 1952, was in the name of the Herald Corporation, petitioner's wholly owned subsidiary, which was eventually granted a television license by the Federal Communications Commission. It would appear that these expenditures made by petitioner inured to the benefit of another corporation.

But in any event, we believe that the expenditures here made by petitioner are not deductible as ordinary and necessary business expenses in 1952. In *Radio Station WBIR, Inc., supra*, we pointed out that, "This Court has consistently held that the cost of acquiring licenses and franchises having useful lives in excess of 1 year are not deductible as business expenses but should be treated as capital expenditures." In that case, as here, the taxpayer made expenditures for the acquisition of a television license, and we held such expenditures to be capital in nature. Petitioner does not deny that the fees were paid for services in connection with a television license application but it argues that this particular application was abandoned, and, therefore, the fees are not capital in nature but are deductible as current expenses. We need not reach the legal merits of this argument, because the record simply does not show that the original application was abandoned. Petitioner's vice president testified that the consultants, under the April 1952 agreement with petitioner, prepared "all necessary material for application filing." The application was filed in June 1952 and the consultants were paid $8,500 by July of that year. It appears that an application of this type is a bulky document. The original application was *amended* in November 1953 and again in February 1954, and the changes in the subsequent applications included the location of the transmitter, the location of the studios, and the program schedule. Apart from these changes there is nothing to show that the rest of the material prepared by the consultants and included in the application was not used. There is nothing in the record to show, as petitioner contends, that the original application was withdrawn and abandoned. In fact, the available evidence strongly indicates the contrary.

We hold that the consultant fees of $8,500 expended by petitioner in 1952 in connection with its application for a television license are capital in nature, and not deductible by petitioner as ordinary and necessary business expenses.

*Decision will be entered for the respondent.*