MILTON H. FRIEND, BERTHA F. LEVY AND ETHEL PACYNA, AS TRUSTEES OF THE TRUST ESTATE CREATED UNDER THE LAST WILL AND TESTAMENT OF HENRY FRIEND, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 90672, 91415. Promulgated October 19, 1939.

*A. J. Pflaum, Esq., Harry N. Wyatt, Esq.*, and *Richard H. Levin, Esq.*, for the petitioners.

*John D. Kiley, Esq.*, for the respondent.

### OPINION.

SMITH: These proceedings, consolidated for hearing, involve income tax deficiencies for the years 1934 and 1935 of $12,088.76 and $7,952.16, respectively. The petitioners allege that the respondent erred:

(1) In the determination of the net rentals from real property in the disallowance of:

a. Amortization of leaseholds upon property located at 6308–6314 South Halsted Street, Chicago;

b. Reasonable amounts for depreciation upon rental properties during each of the taxable years;

c. Legal expenses for 1934 in the amount of $1,290.35.

(2) In the disallowance of the deduction of taxes which had accrued prior to the death of the decedent.

(3) In the disallowance of the deduction from gross income for each year of $14,000 distributed out of income to the decedent's widow.

The petitioners, residents of Chicago, Ill., are the duly qualified and acting trustees of the trust estate created under the will of Henry Friend, deceased, who died a resident of Chicago, on August 1, 1932.

The several contentions of the petitioners will be considered separately.

## I.—AMORTIZATION OF LEASEHOLDS.

*Facts.*—At the time of his death on August 1, 1932, Henry Friend was the owner of real estate located at 6308–6310 and 6312–6314 South Halsted Street, Chicago. On October 30, 1920, he leased to the L. R. Steel Co. the premises at 6308–6310 South Halsted Street for a period of 99 years. The lessee paid to the decedent $75,000 representing the value of the improvements to the real estate. It had the right under the lease to raze the buildings and erect new buildings thereon, the cost of which should not be less than $300,000. The lease provided for the payment of an annual rental of $15,000 net from November 1, 1922, to October 31, 2019. The S. S. Kresge Co. acquired the lease from the L. R. Steel Co. and a supplemental agreement was entered into January 19, 1925, between Henry Friend, lessor, and the S. S. Kresge Co., whereby the lessee was permitted to erect a building upon the premises of not less than two stories and costing not less than $125,000. Under the terms of the supplemental agreement the Kresge Co. was required to pay an annual rental of $18,000 a year net. The Kresge Co. built in 1925 a three-story and basement steel and reinforced concrete building upon the property.

On October 4, 1922, the decedent leased the premises at 6312–14 South Halsted Street to the F. W. Woolworth Co. The decedent and the F. W. Woolworth Co. entered into a supplemental lease dated January 31, 1923. The first Woolworth lease demised the premises for 25 years from January 1, 1924, to December 31, 1948, at an annual rental of $20,000 net. The second Woolworth lease demised the premises from the end of the period covered by the first Woolworth lease, January 1, 1949, for 25 years until December 31, 1973, at an annual rental of $25,000 net. In pursuance of the Woolworth leases the F. W. Woolworth Co. built, in 1924, a two-story brick and wood joist building upon the premises at a cost of $125,000. The useful life of this building was less than the term of the leases.

*Opinion.*—It is the petitioners' contention in these proceedings that the estate of Henry Friend acquired upon his death, on August 1, 1932, leasehold estates upon the two properties, 6308–6310 and 6312–6314 South Halsted Street, and also reversionary estates in respect

of the properties. They contend that the respondent determined the values of these estates separately in the determination of the estate tax liability of the estate of Henry Friend and that a very large value was placed upon the leasehold estates and a very nominal value upon the reversionary estates. They contend that the estate is entitled to deduct from the capitalized value of the leasehold estates a reasonable amount for the amortization of those leasehold estates during the life of the leases and that the taxable income from the properties was the net rents received less reasonable amounts for amortization; that on August 1, 1932, the value of the lessor's right to receive the rents under the Kresge lease was $224,730, or the product of $18,000 times 12.485, the present value of an annuity of $18,000 for 87 years and 3 months, the duration of the Kresge lease; that this amount, amortized on a straight-line basis for 87 years and 3 months would result in an annual amortization allowance of $2,575.70. They further claim that on August 1, 1932, the value of the lessor's right to receive rents under the Woolworth leases was $255,725, computed by adding the present value of an annuity of $20,000 for 16 years and 5 months, the duration of the first Woolworth lease ($20,000 times 9.010, or $180,200), to the present value of an annuity of $25,000 for 25 years deferred 16 years and 5 months, the duration of the second Woolworth lease ($25,000 times 3.021, or $75,525). They further contend that these amounts amortized on a straight-line basis for the respective periods of 16 years and 5 months and 41 years and 5 months would result in annual amortizations of $10,976.65 and $1,823.54, respectively; that the lessor's rights to receive rents with respect to the two properties under the Kresge and Woolworth leases are wasting assets subject to depreciation under section 23 (1) of the Revenue Act of 1934, having bases for depreciation equal to their respective values on August 1, 1932, and rates determined by the terms of the leases from August 1, 1932; that the petitioners are accordingly entitled to deduct from taxable income for each of the taxable years 1934 and 1935 as such amortization of a wasting asset the sum of $15,375.89.

In the alternative they make the contention that the business depression was at a very low point on August 1, 1932; that on that date a reasonable and fair rental for the land at 6308–6310 South Halsted Street, unimproved and unencumbered by any lease, would have been $14,000 per annum net to the owner under a lease of 30 years or more, sufficient to make it worth while for the lessee to erect a suitable improvement; and that on the same date a reasonable and fair rental for the land at 6312–6314 South Halsted Street, unimproved and unencumbered by any lease, would have been $12,500 per annum net to the owner under a lease of 30 years or more. They

then contend that the excess rental receivable by the estate under the terms of the leases was amortizable over the terms of the leases. Upon this basis they contend that the excess rental receivable on the Kresge property had a value on August 1, 1932, of $49,940 and on the Woolworth property $67,575 plus the present value of an annuity of $12,500 per year for 25 years commencing 16 years and 5 months after August 1, 1932, the life of the second Woolworth lease, or $37,760. Upon this alternative basis they claim that the amortization deductible in each of the years 1934 and 1935 was $5,600.

Section 22 of the Revenue Act of 1934 defines "gross income" as including gains, profits, and income derived from "rent, * * * or gains or profits and income derived from any source whatever." Section 23 (1) permits the deduction from gross income of:

(1) DEPRECIATION.—A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence. * * *

We are not dealing here with the case of a taxpayer who has acquired by purchase or by inheritance a right to receive a periodic sum of money for a term of years. Clearly if a taxpayer had invested money in acquiring such right he would be entitled to deduct from the rents received each year an aliquot part of the cost of his investment; for he would be entitled under the statute to recover back the cost of his investment without being taxed thereon.

What we are dealing with here is the case of an estate which owns the fee of real estate which is advantageously leased. The estate had the fee simple title to the real estate located at 6308–6314 South Halsted Street. In a fee simple title all lesser estates, rights, titles, and interests merge. *William Robert Farmer*, 1 B. T. A. 711. We think it immaterial that for the purpose of determining the tax liability in these proceedings the respondent determined the value of the fee by separately valuing the right to receive rentals over the terms of the leases and the remainder interests.

Petitioners claim the right to deduct an amount for amortization under section 23 (1) of the taxing statute. But an allowance for exhaustion obtains only where exhaustion actually exists. If a man's estate is not exhausted there is no ground for a claim for exhaustion. We can not see wherein the estate of Henry Friend was in any wise exhausted during the taxable years in respect of the properties under consideration. The estate did not own the buildings. They had been erected at the expense of the lessees. The petitioners do not even claim that they are entitled to an allowance for depreciation in respect of the buildings. There is no showing here that the value of the estate's fee in the premises was in any wise lessened during the years 1934 and 1935. There is no showing that the rental value of

the premises at the expiration of the leases will be any less than it was upon the dates of the execution of the leases.

The courts and the Board have repeatedly held that the mere right to receive income is not subject to exhaustion even though the right is limited to a term of years. In *Codman* v. *Miles*, 28 Fed. (2d) 823; certiorari denied, 278 U. S. 654, the court stated in part as follows:

(1) It is contended for the plaintiff that, because the income ceased with her death, even though she had the right of appointment as to the principal, she was entitled to have a deduction from the tax because of exhaustion. With this contention we cannot agree. That the amount paid to the plaintiff is income is clearly settled by the Supreme Court of the United States, in the case of *Irwin* v. *Gavit*, 268 U. S. 161, 45 S. Ct. 475, 69 L. Ed. 897. A careful study of this case would seem to settle the question of exhaustion, depreciation, or obsolescence against the plaintiff's contention.

\* \* \* \* \* \* \*

\* \* \* The contention that the value of the estate was each year depleted by exhaustion is intriguing rather than logical. What the plaintiff received and was entitled to receive was not the corpus of the property but the increment annually accruing therefrom. It is nowhere suggested that the corpus of the property, from which the income was derived, was in any way depleted. There is no destruction or diminution by use of the property which furnishes the source of the income, and to allow an abatement for any portion of the taxes accruing each year because of the limited time of the plaintiff's enjoyment of the income would not only defeat the reiterated purpose of Congress as expressed in various provisions of the act, but would invite as well as permit, to an unlimited extent subterfuges whereby those entitled to large incomes could avoid their just obligations to the government.

In our opinion there is no more merit to the petitioners' alternative contention than there is to their main contention. The mere fact that the property was advantageously rented at the date of the death of the decedent does not in our opinion give rise to any claim for an allowance for exhaustion.

## II.—REASONABLE ALLOWANCES FOR DEPRECIATION.

*Facts.*—The following table shows the amounts of depreciation and amortization allowances claimed on the tax returns filed for 1934 and 1935 and the amounts allowed by the respondent:

|  | Claimed | Allowed |
|---|---|---|
| 6308–14 South Halsted Street | $6,125.00 | |
| 6426–48 South Halsted Street | 3,210.42 | $2,140.28 |
| 6352 South Halsted Street | 1,124.60 | 899.68 |
| 1467 Michigan Avenue | 3,000.00 | 2,400.00 |
| 3243 Lawrence Avenue | 4,000.00 | 3,333.33 |
| 6710 North Ashland Avenue | 700.00 | 700.00 |
| Total | 18,160.02 | 9,473.29 |

Reasonable allowances for depreciation for each of the years 1934 and 1935 are as follows:

| | |
|---|---|
| 6308–14 South Halsted Street | ———— |
| 6426–48 South Halsted Street | $8,000.00 |
| 6352 South Halsted Street | 899.68 |
| 1467 Michigan Avenue | 3,000.00 |
| 3243 Lawrence Avenue | 4,000.00 |
| 6710 North Ashland Avenue | 700.00 |

*Opinion.*—We have stated in the first part of our report why we think that the petitioners are not entitled to an allowance for amortization in respect of the properties at 6308–6314 South Halsted Street. At the hearing of these proceedings counsel for the petitioners and the respondent agreed that the correct depreciation allowance for 6352 South Halsted Street was $899.68 and for 6710 North Ashland Avenue, $700. In the determination of the deficiencies the respondent did not change the cost basis for the determination of the depreciation on the properties at 1467 Michigan Avenue and 3243 Lawrence Avenue. He did, however, change the rate. From a consideration of all of the evidence in these proceedings we are satisfied that the depreciation allowance claimed in the return was correct, namely, $3,000 on the property at 1467 Michigan Avenue, and $4,000 on the property at 3243 Lawrence Avenue.

The property at 6426–6448 South Halsted Street consists of 12 stores. In the income tax returns filed depreciation was claimed at the rate of 6 percent upon a valuation of $53,507. The respondent reduced the rate to 4 percent. In 1933 an examination was made of these properties and it was decided that it would be more profitable for the estate to raze the buildings and erect new buildings from which larger rents could be obtained. It was found that the roof of one of the buildings needed renewal. It was decided, however, to wait a few years before this was done. In 1937 it was found that all of the roofs would have to be renewed and it was decided to raze all of the buildings in that year. The only portions of the old buildings which were utilized in the construction of the new buildings were a few of the walls in good condition and some of the footings. At the hearing of these proceedings counsel for the Government admitted that a reasonable allowance for depreciation was 20 percent a year upon the valuation at the date of the death of the decedent, August 1, 1932, of $40,000. Upon the basis of the entire evidence the Board has concluded that the depreciation sustained each year is $8,000. Therefore, the petitioner is entitled to an allowance for depreciation for each of the taxable years under review of $16,599.68.

### III.—LEGAL EXPENSES.

*Facts.*—In the estate's income tax return for 1934 there were deducted certain amounts for legal expenses. The respondent in the determination of the deficiency disallowed $1,290.35 on the ground that this represented capitalizable costs relating to the title to the property. The evidence shows, however, that the amount of $1,290.35 was expended by the estate in connection with the default of one Weinstein, the tenant of the petitioners in the building at 6426 South Halsted Street and sublessor of the stores comprising said building. Upon the withdrawal by Weinstein the petitioners feared that rents would be collected by him from the sublessees, and, in order to protect their rights against the sublessees, the petitioners found it necessary to apply to a court of equity for a receiver, to hold hearings, to prepare various documents, and to make numerous expenditures for attorneys' fees, master's fees, court reporter's costs, and other similar items. The estate owned title to the property long before the year 1934 and the expenditures had no relationship to the ownership of the property.

*Opinion.*—Since the evidence shows that the amount of $1,290.35 was paid to protect the estate's interest in the rents collectible upon the property at 6426 South Halsted Street, the Board is of the opinion that the amount represents an ordinary and necessary expense of earning income and is a legal deduction from gross income.

### IV.—DEDUCTIONS ACCRUED AND PAID PRIOR TO DECEDENT'S DEATH.

*Facts.*—During the year 1934 the estate paid $9,970.37 for taxes on various parcels of real estate which had become a lien on the several properties prior to the death of the decedent. The respondent disallowed the deduction of these taxes in the determination of the deficiency.

*Opinion.*—The action of the respondent in disallowing the deduction of these taxes is clearly correct. They represent claims against the estate of the decedent. They are not legal deductions from the gross income of the estate. *Roy J. O'Neil et al., Executors*, 31 B. T. A. 727; *Herbert G. Perry et al., Executors*, 32 B. T. A. 513; and *Jacob S. Hoffman, Estate*, 36 B. T. A. 972.

### V.—AMOUNTS OF INCOME DISTRIBUTED TO THE DECEDENT'S WIDOW.

*Facts.*—During the calendar years 1934 and 1935 the estate of Henry Friend paid the sum of $14,000 each year to Emma Friend, the wife of the decedent and the mother of the petitioners herein. These sums were deducted from the net income of the estate for the calendar years 1934 and 1935 and the deductions were disallowed by the respondent in the determination of the deficiencies.

The last will and testament of the decedent provided in part in paragraph tenth (b) and in paragraph tenth (f) as follows:

(b) After setting aside the trust funds hereinbefore in Section (a) of this ARTICLE TENTH provided for, I direct said Trustees to divide all of said Trust Estate then remaining (which Trust Estate then remaining is hereinafter in this Will sometimes referred to as "Residuary Estate") into two (2) equal parts, which parts are hereinafter sometimes referred to as Parts "A" and "B," respectively.

(1) I DIRECT said Trustees to pay the entire net income arising from Part A to my wife, *Emma Friend*, during the term of her natural life.

(2) I DIRECT said Trustees to divide Part B, or, in the event of the death of my said wife prior to my death, then said entire Residuary Estate, into as many shares as I shall have children living at the time of my death and lawful issue living at such time of any deceased child, such lawful issue of a deceased child, for the purpose of such division, to count as but one child, which shares are hereinafter sometimes referred to as "Shares" and each of which Shares is hereinafter sometimes referred to as "Share," and I further direct that said respective Shares shall be designated by the names of my respective children living at the time of my death and by the name or names of my child or children, if any, who shall have died prior to the time of my death, leaving lawful issue surviving at the time of my death. I further DIRECT that each of such Shares shall constitute and be held by said Trustees as a separate trust fund.

\*        \*        \*        \*        \*        \*        \*

(f) I DIRECT that none of the beneficiaries named in ARTICLE TENTH of this, my Last Will and Testament, shall be entitled to any income from said Trust Estate, or from the part thereof from which they may be entitled to income, until after the receipt of my Trust Estate by said Trustees from said Executors and the division of said Trust Estate by said Trustees as hereinbefore provided, but any and all income accruing until such division shall become and be a part of the corpus of the Trust Estate.

At the time that the will was drawn and at the time of the decedent's death, it was contemplated that the executors named in the will would be discharged and the trust estates established under the will would be created by the end of one year or 15 months after the decedent's death. The money received by Emma Friend as a widow's award under the statutes of Illinois was expected to be and was sufficient to maintain her for a period of 15 months after decedent's death. As a result of certain litigation with the board of education of the city of Chicago, and as a result of the controversy over the Federal estate tax payable by the estate of the decedent, the executors were not discharged and the assets were not turned over to the trustees until after 1935. In 1934 Emma Friend, who had been estranged from the decedent at the time of his death and whose relationship with the petitioners, her children, was somewhat strained, demanded the payment of $14,000 a year from the executors. She had no other income during those years and the amount of $14,000 was necessary for her to live on. Emma Friend threatened, unless such sums were paid to her, to institute litigation against the estate.

Conferences were held between the executors of the estate and Emma Friend and the executors agreed to pay her out of the income of the estate the sum of $14,000 a year until the estate should be closed, and the distributions made in pursuance thereof were forced by the threatened litigation, disharmony, and loss. Emma Friend returned for each of the years 1934 and 1935 the $14,000 received by her and paid income tax thereon.

*Opinion.*—The respondent contends that the amount paid by the estate to Emma Friend is not a legal deduction from the gross income of the estate. He relies upon article 162 of Regulations 86, which provides that "An allowance paid a widow out of the corpus of the estate is not deductible from gross income." Section 162 of the Revenue Act of 1934 provides in part as follows:

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(c) In the case of income received by estates of deceased persons during the period of administration or settlement of the estate, and in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary.

The evidence in these proceedings shows that the net income of the estate was more than ample to pay the widow the $14,000 claimed by her. The trust estates which were set up under the will of Henry Friend provided that the widow should receive for life the income from one of the trust estates equaling one-half of the residuary estate. One-half of the income of the estate for each of the taxable years was largely in excess of $14,000.

The respondent points out that the will specifically provided that during the period of the administration of the estate all of the income should be collected and made a part of the capital which went to constitute the trust funds. But it clearly is the law of the State of Illinois that, where all of the parties in interest agree to a different distribution of the estate from that which is provided for by the will, the courts of Illinois will give sanction to such treatment. Thus in *Van Zanten* v. *Van Zanten*, 269 Ill. 491; 109 N. E. 986, the facts were that before the decedent's death, there occurred the signing of a number of deeds purporting to convey certain parcels of decedent's real estate to his children. There was never any delivery of these deeds. The decedent's will devised all the decedent's estate to his wife and after her death equally among the five children. A few days after the decedent's death, after the will had been read, all of the children

signed an agreement allocating to each child the parcel of land which he had occupied under the undelivered deeds. It further provided for the payment of $1 per year for each acre of land held by the various children to their mother for her support. In spite of this agreement all of the real estate of the decedent was transferred to one of his sons as executor and was included in his probate inventory. Later, another of the sons filed an appeal to remove the cloud on his title to the tract of land which he contended was his according to the agreement executed shortly after the decedent's death. The Supreme Court of Illinois held that the agreement was valid and enforceable and had the effect of vesting title to the lands according to its terms in spite of the provisions of the decedent's will to the contrary. The court said:

* * * The children were all adults, under no disability. They and the widow were the only persons having any interest in the estate, except creditors, and it is not claimed that the rights of any creditor are involved. *The widow and children could by agreement make any disposition of the property they chose, regardless of the will.* *Cotterell* v. *Coen*, 246 Ill. 410 * * * Unquestionably the children, by their written instrument executed a few days after their father's death, agreed to a different disposition of the estate from that made by the will, and, while the agreement was not signed by the widow, she was present when it was made, and knew of and acquiesced in it. * * * [Italics supplied.]

The same rule was followed in *Cole* v. *Cole*, 292 Ill. 154; 126 N. E. 752, in which the decedent's will gave the entire estate to the widow for life and after her death to various children in equal parts for life with remainders to their respective children and each other, depending upon survivorship. Upon the decedent's death an appeal was filed to contest the will on the ground of incapacity, and all of the specifically named beneficiaries entered into an agreement for the equal division of the entire estate among the children in fee, appointing two "Commissioners" to make the division. Some of the parties brought a bill against the commissioners for the specific performance of the agreement and the court held that the agreement was valid, although contrary to the terms of the will.

Another case in which an agreement was approved and endorsed by the Illinois Supreme Court, although no resort to the courts had been made, was *Wolf* v. *Uhlemann*, 325 Ill. 165; 156 N. E. 334.

We conclude that the agreement made by the parties in interest is here controlling and that the $14,000 paid by the estate to Emma Friend in each of the years 1934 and 1935 was properly paid and is a legal deduction from the gross income of the estate.

*Decisions will be entered under Rule 50.*