**COLORADO NATIONAL BANK-SHARES, INC., and Subsidiaries, Petitioner–Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellant.**

**No. 91–9019.**

United States Court of Appeals, Tenth Circuit.

Jan. 25, 1993.

Francis M. Allegra, Tax Div., Dept. of Justice, Washington, DC (Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, and Jonathan S. Cohen, Tax Div., Dept. of Justice, Washington, DC, with him on the brief), for respondent-appellant.

James E. Bye (William S. Huff, Douglas A. Pluss and Charles B. Bruce, Jr., with him on the brief), of Holme Roberts & Owen, Denver, CO, for petitioner-appellee.

Before McKAY, Chief Judge, and McWILLIAMS, and KELLY, Circuit Judges.

PAUL KELLY, Jr., Circuit Judge.

Commissioner appeals the decision of the Tax Court redetermining deficiencies in taxes paid by petitioner-appellee Colorado National Bankshares and its subsidiaries for the 1982, 1983 and 1984 tax years. The Commissioner alleges that the Tax Court erred in holding that the taxpayer was entitled to an amortization[1] deduction under I.R.C. § 167 with respect to core deposit intangibles. We affirm.

## Background

Taxpayer purchased seven banks in 1981 and 1982. On its 1982, 1983 and 1984 tax returns, taxpayer claimed amortization deductions for the core deposit intangibles of the acquired banks under I.R.C. § 167(a). Taxpayer defined core deposits as deposit liabilities on which no or low interest rates are paid, specifically, funds on deposit with the acquired banks from the following types of accounts: (1) interest-free checking accounts; (2) interest-paying checking accounts ("NOW" accounts); and (3) savings accounts, with or without a passbook. Taxpayer intended to reinvest the core deposits at higher rates of interest. The spread between the interest paid on the core deposits and the rate at which taxpayer reinvested the assets represented a positive income stream to the bank. Taxpayer claimed the present value of these future income streams as an intangible asset, for which an amortization deduction was sought.

The Commissioner disallowed the deductions on the theory that the core deposit intangibles should be considered part of the goodwill of the banks, for which no deduction is allowed. Taxpayer petitioned the Tax Court for a redetermination of the deficiency. After a six-day trial, the Tax Court held for taxpayer and, after modifying the method used in calculating the present value of the core deposit intangibles from the income method to the market alternative source of capital method, allowed the deductions. The Commissioner filed a timely notice of appeal. Our jurisdiction arises under 26 U.S.C. § 7482(a) and we affirm.

## Discussion

■ This appeal presents one question— whether the "core deposits" of seven banks

---

**1.** Amortization refers to the reduction in value of intangible assets, whereas depreciation refers to the reduction in value of tangible assets. Although § 167 uses the term depreciation, we use the term amortization when referring to intangible assets.

acquired by taxpayer should be treated as goodwill for the purposes of computing income tax amortization deductions. A taxpayer may claim an amortization deduction on intangible assets if that asset "is known from experience or other factors to be of use in the business or in the production of income for only a limited period, the length of which can be estimated with reasonable accuracy." Treas.Reg. § 1.167(a)–3. However, "[n]o deduction for depreciation is allowable with respect to goodwill." Id. See *Newark Morning Ledger Co. v. United States*, 945 F.2d 555, 559 (3rd Cir. 1991) *cert. granted*, —— U.S. ——, 112 S.Ct. 1583, 118 L.Ed.2d 303 (1992); *Southern Bancorporation, Inc. v. Commissioner*, 847 F.2d 131 (4th Cir.1988); *Houston Chronicle Publishing Co. v. United States*, 481 F.2d 1240 (5th Cir.1973); *cert. denied*, 414 U.S. 1129, 94 S.Ct. 867, 38 L.Ed.2d 754 (1974).

■ A two-step analysis must be performed to determine whether a taxpayer may validly claim an amortization deduction for an intangible asset. The taxpayer must demonstrate that the intangible asset (1) has an ascertainable value independent of goodwill, and (2) has a limited useful life, the duration of which can be ascertained with reasonable accuracy. *Newark Morning Ledger*, 945 F.2d at 562; *Houston Chronicle*, 481 F.2d at 1250. Determination of whether an intangible asset meets this two-part test is a question of fact to be determined by the Tax Court. *Houston Chronicle*, 481 F.2d at 1243; *Decker v. Commissioner*, 864 F.2d 51, 54 (7th Cir.1988). We review factual findings of the Tax Court under the clearly erroneous standard. Fed.R.Civ.P. 52(a); *First Nat'l Bank v. Commissioner*, 921 F.2d 1081, 1086 (10th Cir.1990).

Colorado Bankshares presented the Tax Court with substantial evidence, and the Tax Court found, that the core deposit intangibles were separate and distinct from goodwill, and had both an ascertainable value independent of goodwill and a limited useful life. This conclusion is reinforced by relevant regulatory treatment of goodwill and core deposits. Although not nec-

essarily controlling for income tax purposes, in the absence of an income tax regulation it is certainly pertinent evidence that the Financial Accounting Standards Board (FASB), the Securities and Exchange Commission, and the Office of the Comptroller of the Currency all require banks to record their core deposits as assets separate and apart from goodwill. See *Applying APB Opinions No. 16 and 17 When a Savings. and Loan Association or a Similar Institution Is Acquired in a Business Combination Accounted for by the Purchase Method*, FASB Interpretation No. 9 at ¶ 8(a) (FASB Feb. 1976); Staff Accounting Bulletin No. 42, Business Combinations, 46 Fed.Reg. 63252–01 at ¶ 3 (SEC Dec. 1981); *Accounting for Intangible Assets*, Banking Circular No. 164 (Revised) (OCC July 1985).

For purposes of calculating an appropriate purchase price and as part of regulatory submissions required for the purchases, taxpayer conducted detailed and thorough studies specifically identifying and estimating the value of the assets of the banks proposed for acquisition. As part of these studies, it estimated the expected lives of the core deposits, and the income likely to result from their reinvestment.

A taxpayer may establish the useful life of an asset for amortization purposes based upon his or her own experience with similar property or, if his or her experience is inadequate, may base the estimate upon the general experience in the industry. Treas.Reg. § 1.167(a)–1(b). Here, taxpayer consulted with certified public accountants conversant in the field prior to claiming the amortization deduction. Taxpayer introduced expert testimony estimating the value and useful life of the core deposits. The Tax Court apparently credited the CPA's report, which identified the assets of the acquired banks and determined the expected lives and fair market values of those assets.

■ Our review of the estimates of the value and useful life of the core deposits show them to be neither arbitrary nor unrealistic. See *Sunset Fuel Co. v. United States*, 519 F.2d 781, 785 (9th Cir.1975)

(disallowing deduction for customer list since method of valuation of lost customers was found arbitrary and unrealistic). The taxpayer need only determine a reasonable approximation of value for purposes of depreciation—absolute certainty is not required. *Burnet v. Niagara Falls Brewing Co.,* 282 U.S. 648, 51 S.Ct. 262, 75 L.Ed. 594 (1931); *Massey Motors, Inc. v. United States,* 364 U.S. 92, 105, 80 S.Ct. 1411, 1418–19, 4 L.Ed.2d 1592 (1960); *Banc One Corp. v. Commissioner,* 84 T.C. 476, 499 (1985), *aff'd,* 815 F.2d 75 (6th Cir.1987).

On appeal, the Commissioner does not challenge taxpayer's estimates of the predicted life and value of the core deposits, nor does she point to specific facts in the record that demonstrate that the Tax Court's findings were clearly erroneous. Rather, the Commissioner states, in a very conclusory fashion, that core deposit intangibles are part of goodwill, and can never merit an amortization deduction. The Commissioner contends that even if taxpayer can estimate the value and duration of the core deposits with reasonable accuracy, the patronage of core depositors still constitutes a central element of goodwill. Aplt. Brief at 13. We disagree.

The Third Circuit has found certain intangible assets inseparable from goodwill. *Newark Morning Ledger,* 945 F.2d 555. However, the taxpayer in that case attempted to depreciate approximately $68 million, a sum attributable to the future profits it hoped to derive from the future patronage of 460,000 at-will newspaper subscribers, a totally different situation than that found by the Tax Court in the instant case.[2] When dealing with core deposits, the Tax Court consistently has held that core deposits are not *per se* a part of goodwill, and that a taxpayer who demonstrates reasonably ascertainable value and limited useful life for these assets may claim a valid amortization deduction. *See IT & S of Iowa, Inc. v. Commissioner,* 97 T.C. 496 (1991); *Citizens & Southern Corp. v. Commissioner,* 91 T.C. 463 (1988), *aff'd,* 900 F.2d 266 (11th Cir.1990).

Appellant asks us to adopt the Third Circuit's very expansive view of goodwill as expressed in *Newark Morning Ledger.* We decline to do so, and follow the Tax Court's interpretation of the amortization deduction as applied to core deposits. We reaffirm that a taxpayer cannot claim an amortization deduction for assets that are part of goodwill. However, neither the IRS, the Treasury Department, nor Congress have promulgated a specific and uniform definition of goodwill. Although case law establishes that goodwill constitutes "the expectancy of continued patronage, for whatever reason," this amorphous and general definition provides little practical guidance to taxpayers and courts asked to define the parameters of the amortization deduction. *See Commissioner v. Killian,* 314 F.2d 852, 855 (5th Cir.1963); *Boe v. Commissioner,* 307 F.2d 339, 343 (9th Cir. 1962). Even the one circuit court sympathetic to the commissioner's argument noted critically that "the Service apparently has been content to permit the courts to wrestle, case-by-case, with the contours of this elusive concept, with the result that it wins most cases because the taxpayer cannot sustain the onerous burden of establishing value and determinable life." *Newark Morning Ledger,* 945 F.2d at 559 n. 5. Here, the Commissioner does not seriously dispute that the taxpayer has sustained its burden of demonstrating value and a limited useful life for the core deposit intangibles.

The Commissioner apparently agrees that a bank acquiring the right to service loans and use escrow funds associated with those loans would be able to amortize the value of the right to service the loans and use the escrow funds, since the loans would " 'have life spans which are definite and certain, the necessary criteria to amortize an intangible asset.' " Aplt. Reply Brief at 14 n. 15 (quoting *First Pennsylvania Banking Trust Co. v. Commissioner,* 56 T.C. 677, 686 n. 5 (1971)). The Commissioner attempts to distinguish these funds from core deposits by stating that a fixed-term

---

2. A determination of whether subscriber lists would be amortizable is fact-specific, and we

express no opinion as to whether such assets would in fact be amortizable.

loan has a definite life span. However, the Commissioner fails to distinguish convincingly the amortization of the value of such funds once the life span of core deposits has been estimated with reasonable certainty.

Categorization of core deposit intangibles is admittedly a close question. We decline to accept the Commissioner's absolute prohibition on amortizing these assets for many reasons, the most important of which are: (1) sufficient evidence demonstrating that these core deposits have a life expectancy that can be determined with reasonable accuracy, (2) the Tax Court's factual determination that these core deposits were not self-regenerating, (3) the reasonableness of the Tax Court's consistent pronouncements on this very question, (4) the lack of a workable and useful definition of goodwill, (5) the adequacy of the residual method of calculating goodwill, (6) the necessity of substantial additional time, effort and expense to produce income from the core deposits, and, (7) the fact that the core deposits could have been severed and transferred apart from the goodwill of the banks in question.

Accordingly, the judgment of the Tax Court is

AFFIRMED.