JACK M. MOORES AND JOAN G. MOORES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Moores v. Commissioner
Docket No. 25181-92
United States Tax Court
T.C. Memo 1995-52; 1995 Tax Ct. Memo LEXIS 45; 69 T.C.M. (CCH) 1797; January 31, 1995, Filed *45 Decision will be entered for respondent. For Petitioners: A. Craig Fleishman and James P. Gregory. For respondent: Virginia L. Hamilton. HAMBLEN
HAMBLEN
MEMORANDUM OPINION HAMBLEN, Chief Judge: Respondent determined deficiencies in petitioners' Federal income tax for the years and in the amounts as follows: Year
Deficiency
1986
$  22,700
1987
109,852
1988
79,817
1989
31,355
The sole issue for decision is whether petitioners may separately depreciate (or amortize) the so-called premium value of a lease encumbering an office building that petitioner Jack M. Moores purchased in 1986. Unless otherwise indicated, section references are to the Internal Revenue Code as in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure. Background
The facts in this case were fully stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided in Lakewood, Colorado, at the time they filed their petition for redetermination. On September 1, 1986, petitioner Jack M. Moores entered into a contract to purchase the Energy I Building, an office *46 building located in Casper, Wyoming. The Energy I Building, constructed in 1975 of precast concrete, is a two-story structure containing a total of 66,625 square feet, with 52,237 square feet of leasable space. The property includes parking spaces and two garage structures. As of September 1, 1986, the Energy I Building was encumbered by a lease. Specifically, by lease agreement dated May 1, 1979, Gulf Oil Company (Gulf) contracted to lease the Energy I Building for a term of 5 years for a rent of $ 394,392 per year. On July 1, 1983, Gulf executed a lease extension agreement extending the lease for an additional 5 years (through April 30, 1989) for a rent of $ 647,216.43 per year. As of September 1, 1986, the rent that Gulf was obligated to pay under the lease extension agreement exceeded market rental rates, resulting in a so-called lease premium value. The terms by which petitioner Jack M. Moores acquired the Energy I Building are memorialized in a document entitled "REAL PROPERTY PURCHASE AGREEMENT" (the purchase agreement) which states in pertinent part: NOW, THEREFORE, in consideration of the mutual undertakings of the parties hereto, it is hereby agreed as follows: *47 1. Purchase and Sale. Seller agrees to sell to Buyer, and Buyer agrees to purchase from Seller, the Land, together with all right, title and interest of Seller in and to all improvements, structures, supplies and fixtures located upon the Land, all right, title and interest of Seller in and to the personal property located upon or about the Land and used in the operation of said office building, all right, title and interest of Seller in and to the name "Energy I Building", and, to the extent assignable, all right, title and interest of Seller in and to all leases, contract rights, agreements, tenant lists, advertising material and telephone exchange numbers (hereinafter, collectively, the "Property"), all upon the terms, covenants and conditions hereinafter set forth. 2. Purchase Price. The purchase price for the Property shall be the sum of $ 2,210,644.
In addition to the purchase agreement, the transfer of the Energy I Building is evidenced by a special warranty deed, a bill of sale and assignment, and an assignment of parking lease. The various documents memorializing the transfer of the property do not purport to allocate the purchase price among the building, *48 land, personal property, or the Gulf lease. However, the parties now agree that the $ 2,210,644 purchase price is allocable in part to land and personal property in the amounts of $ 175,000 and $ 103,564, respectively. As a result of his purchase of the Energy I Building, petitioner Jack M. Moores acquired the seller's entire interest in the Gulf lease. As of September 1, 1986, there were 32 months remaining under the 1983 Gulf lease extension agreement. The useful life of the Energy I Building substantially exceeded the remaining term of the lease under the lease extension agreement. In computing their Federal income taxes for the years in issue, petitioners allocated $ 932,715 of the total purchase price for the Energy I Building to the building itself and began reporting depreciation deductions computed under the straight line method over 19 years. At the same time, petitioners allocated $ 1,000,000 of the total purchase price for the Energy I Building to the premium value of the lease. Viewing the premium value of the lease as a separate, depreciable asset, petitioners reported amortization deductions over the 32-month rental period remaining under the Gulf lease extension *49 agreement. Specifically, petitioners reported amortization deductions in the amounts of $ 125,000, $ 375,000, $ 375,000, and $ 125,000, on their Federal income tax returns for the taxable years 1986, 1987, 1988, and 1989, respectively. Upon examination of petitioners' tax returns, respondent disallowed the amortization deductions described above. The deficiency notice issued to petitioners states in pertinent part: Amortization expense deductions * * * are not allowable because it has not been established that any portion of the 1986 building acquisition costs were paid for (or allocable to) an amortizable or depreciable asset other than the building itself.
In conjunction with the disallowance of the amortization deductions reported by petitioners, respondent allowed petitioners increased depreciation deductions attributable to the building in the amounts of $ 14,990 for 1986, and $ 52,966 for each of the years 1987, 1988, and 1989. These latter adjustments were made to account for respondent's reallocation of adjusted basis from the lease premium to the building. [1]
*50 There is no dispute that the rent provided under the Gulf lease extension agreement exceeded market rental rates on September 1, 1986. Further, the parties now agree (contrary to petitioners' original reporting position) that the premium value of the Gulf lease was $ 765,000 on September 1, 1986. Discussion
Section 167(a) provides the general rule that a deduction for depreciation is permitted to account for the exhaustion, wear and tear, and obsolescence of property that is either used in the taxpayer's trade or business or held for the production of income. Sec. 1.167(a)-(1), Income Tax Regs. See Massey Motors, Inc. v. United States, 364 U.S. 92, 93 (1960); Colorado Natl. Bankshares, Inc. v. Commissioner, T.C. Memo. 1990-495, affd. 984 F.2d 383 (10th Cir. 1993). A deduction for depreciation is generally available for both tangible and intangible property. In this regard, section 1.167(a)-(3), Income Tax Regs., provides that: If an intangible asset is known from experience or other factors to be of use in the business or in the production of income for only a limited period, *51 the length of which can be estimated with reasonable accuracy, such an intangible asset may be the subject of a depreciation allowance. * * *
Deductions are a matter of legislative grace, and petitioners bear the burden of proving their entitlement to any deduction claimed on their Federal income tax returns. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, 290 U.S. 111, 115 (1933); see Rule 142(a). Petitioners contend, contrary to respondent's determination, that the premium value of the Gulf lease is an intangible asset that is subject to an amortization expense deduction separate from the depreciation allowance available with respect to the Energy I Building. Petitioners assert that they need only show that the premium value of the lease has an ascertainable value and a limited useful life. We disagree. The issue raised in this case is in no sense a novel one. [2] The issue has been addressed by this Court in a number of cases including Fieland v. Commissioner, 73 T.C. 743 (1980); Midler Court Realty, Inc. v. Commissioner, 61 T.C. 590 (1974), *52 affd. 521 F.2d 767 (3d Cir. 1975); Schubert v. Commissioner, 33 T.C. 1048 (1960), affd. 286 F.2d 573 (4th Cir. 1961); Moore v. Commissioner, 15 T.C. 906 (1950), revd. and remanded 207 F.2d 265 (9th Cir. 1953), on remand T.C. Memo. 1955-219; Friend v. Commissioner, 40 B.T.A. 768 (1939), affd. 119 F.2d 959 (7th Cir. 1941). As explained in more detail below, this Court has uniformly held that an amortization deduction is not allowed under the circumstances presented. *53 We begin our review with Moore v. Commissioner, supra, a case involving a taxpayer who inherited a one-half interest in a building encumbered by a favorable lease. The matter came before this Court for consideration of two issues: (1) Whether the taxpayer was entitled to a depreciation deduction with respect to her inherited one-half interest in the building; and (2) whether the taxpayer was entitled to an amortization deduction with respect to the premium value of the lease. Although we held that the taxpayer was entitled to a depreciation deduction with respect to the building, Moore v. Commissioner, supra at 910-911, we nevertheless rejected the taxpayer's argument that she should be allowed an amortization deduction with respect to the premium value of the lease. As the following excerpt reveals, we concluded that it would be inappropriate to treat the lease as a separate, depreciable asset. In the case of Milton H. Friend, 40 B.T.A. 768, affd., 119 Fed. (2d) 959, certiorari denied, 314 U.S. 673, a somewhat related theory was advanced by the taxpayer. *54 There, decedent, prior to his death, leased certain properties upon which the lessees erected buildings at their own expense. Petitioners, trustees of the testamentary trust, claimed the right to deduct from the gross rentals amortization of the capitalized values of the rents to be received under the leases. We held that petitioners were not entitled to such deductions, since "the mere fact that the property was advantageously rented at the date of the death of the decedent does not in our opinion give rise to any claim for an allowance for exhaustion." (p.772.) This theory was approved in Martha R. Peters, 4 T.C. 1236. In that case, petitioner acquired, through the partial liquidation of a Massachusetts voluntary association, an undivided interest in certain realty then under lease. We held that the right to receive rent under the lease is acquired as an incident to ownership of the fee, and that the difference between the total rentals payable under the unexpired term of the lease and the estimated fair rental value for the term was not amortizable over the remaining life of the lease. * * * Here, as in the Peters case, we are not concerned *55 with the value of the lessor's interest in the lease as a separate item of property. What petitioner inherited from her mother was an undivided half interest in the land under the Barker Bros. Building and a reversionary interest in the building. Petitioner has attempted to separate the right to receive rent from the bundle of rights possessed by the holder of the fee. The right to receive rent under the lease to which the land was subject at the time of her mother's death was merely incident to the ownership of the fee. The lease grew out of the land, is reflected in the value of the land, and it neither constitutes a separate capital asset, nor increases the value of the building. [Moore v. Commissioner, 15 T.C. at 911-912.]
On appeal, the U.S. Court of Appeals for the Ninth Circuit reversed our decision and remanded the matter back to this Court for further proceedings. Commissioner v. Moore, 207 F.2d 265 (9th Cir. 1953). In particular, the Court of Appeals for the Ninth Circuit held that, while the taxpayer was not entitled to a depreciation deduction for her inherited one-half interest in the building, id. at 271-272, *56 an allowance by way of an amortization deduction should be permitted with respect to the premium value of the lease so long as the lease is found to be subject to ultimate exhaustion. Id. at 276. Central to the latter holding was the court's view that the lease should be treated as "a separate asset, apart from the land." Id. at 274. [3]
Several years later, we decided Schubert v. Commissioner, supra, a case involving facts and issues quite similar to those presented in Moore v. Commissioner, supra. Specifically, the taxpayer, a life beneficiary of a testamentary trust whose corpus included a building encumbered by a purported favorable lease, reported depreciation deductions with *57 respect to the building. In response to the Commissioner's disallowance of the depreciation deductions, the taxpayer filed a petition with this Court contesting that determination, and asserting in the alternative that she should be allowed a deduction representing the amortization of the premium value of the lease. Upon review of the matter, we sustained the Commissioner's original determination disallowing the depreciation deductions that the taxpayer claimed with respect to the building, Schubert v. Commissioner, supra at 1052, and rejected the taxpayer's alternative argument regarding amortization of the premium value of the lease. Id. at 1054. With respect to the amortization issue, we declined to treat the lease as a separate, depreciable asset (notwithstanding the approach taken by the U.S. Court of Appeals for the Ninth Circuit in Moore v. Commissioner, supra), as follows: We see no justification for the separability of the favorable lease value from the many elements that determine the entire value of realty. It was apparently held in Commissioner v. Moore, supra, *58 that there is no difference between a transfer by death or purchase; that the devisee of the land is to be considered a purchaser of the lease paying "a bonus or premium for the acquisition of the 'favorable' features of the lease," which he should be allowed to recover as his "investment" in the property by depreciating a portion of the rents he will receive over the remaining period of the lease. If the purchaser would be entitled to isolate the lease from the fee and take deductions for the favorable portion of the lease, it means some of the rents reserved in the lease would escape ordinary income taxation altogether. This is so because the seller of favorably leased property is entitled to treat the sale as a single transaction or the sale of a single asset with the lease merged in the fee subject to capital gains treatment. If it is logical to say an amount of rent due under the lease, which is considered in excess of normal rent, can be deducted by the purchaser of the favorably leased realty, then it would be equally logical to say the seller should be forced to isolate this amount of rent due under the lease and take it into his ordinary income. We think the sound solution *59 is to treat the lease interest as merged into the fee. * * * We hold that the fact, if it be a fact, that the property was advantageously rented at the date of decedent's death, does not give rise to any claim for deduction for amortization or depreciation of the capitalized value of excess rentals over what might be considered market rentals, on the date of decedent's death. * * * [Schubert v. Commissioner, 33 T.C. at 1053-1054.]
Our decision was affirmed on appeal by the U.S. Court of Appeals for the Fourth Circuit. Schubert v. Commissioner, 286 F.2d 573 (4th Cir. 1961). The Court of Appeals' opinion is noteworthy for its obvious skepticism regarding the taxpayer's theory that the premium value of a lease should be treated as a separate, depreciable asset. Id. at 583. [4] Further, even assuming the taxpayer's theory to be a viable one, the Court of Appeals for the Fourth Circuit concluded that the taxpayer had failed to show that the lease was a wasting asset. Id.
*60 The amortization issue presented in the instant case was also raised in Midler Court Realty, Inc. v. Commissioner, 61 T.C. 590 (1974), affd. 521 F.2d 767 (3d Cir. 1975). In Midler Court Realty, Inc., the taxpayer purchased a number of buildings encumbered by leases. The taxpayer allocated the purchase price between the land and the various buildings and reported depreciation deductions based on a useful life of 15 years for each of the buildings. In proceedings before this Court, the taxpayer modified its position and argued that it should be permitted to amortize a portion of the cost of certain of the buildings to reflect the premium value of the leases encumbering those buildings. We rejected the taxpayer's position on several grounds. First, we found the taxpayer's amortization argument to be incompatible with both the law of real property and our prior decisions, including Friend v. Commissioner, 40 B.T.A. 768 (1939), and Schubert v. Commissioner, supra.Midler Court Realty, Inc. v. Commissioner, supra at 595. Further, we stated that *61 the reasoning of Moore v. Commissioner, supra, was inapplicable to the facts of the case before us. We noted that the taxpayer (Midler Court Realty) had not purchased the leases separately from the fee interest in the properties in question and had made no effort, prior to trial, to allocate any part of the cost of the properties to the leases. Midler Court Realty, Inc. v. Commissioner, supra. We also observed that the taxpayer's position conflicted with its election to use the declining balance method of depreciation with respect to the properties. Id. at 597. Our decision was affirmed on appeal by the U.S. Court of Appeals for the Third Circuit. Midler Court Realty, Inc. v. Commissioner, 521 F.2d 767 (3d Cir. 1975). Notably, the Court of Appeals for the Third Circuit concluded that the taxpayer failed to prove the premium value of the leases in question. Id. at 770-771. In sum, we have uniformly rejected the proposition that the premium value of a lease may be the subject of an amortization deduction under the circumstances presented. [5] *63 Moreover, petitioners have failed to persuade us that *62 we should now hold otherwise. [6]
Consistent with our prior decisions, we maintain the view that there is no basis in law or fact for treating the premium value of the lease in question as an asset separate and distinct from the fee interest in the property that petitioner Jack M. Moores acquired. In simple terms, the value of the lease (whether favorable or otherwise) is reflected in the value of the property that it encumbers -- here the Energy I Building. Schubert v. Commissioner, 33 T.C. at 1053-1054; Moore v. Commissioner, 15 T.C. at 911-912. Because we decline to treat the premium value of the lease as a separate, depreciable *64 asset, it follows that cases such as INDOPCO, Inc. v. Commissioner, 503 U.S. 79 (1992), and Newark Morning Ledger v. Commissioner, 507 U.S.    , 113 S.Ct. 1670 (1993), are inapposite. Petitioners also place undue emphasis on the fact that the leasehold interest in question was purportedly "transferred" to petitioner Jack M. Moores by way of a document entitled "Bill of Sale and Assignment" while ownership of the underlying property was transferred by special warranty deed. However, petitioners have failed to prove the effect, if any, of the bill of sale. Moreover, as previously indicated, the documents memorializing the transfer of the property in question do not provide for an allocation of the purchase price to the leasehold interest as distinguished from the building, land, or personal property involved. Thus, regardless of the technical niceties surrounding the transfer of the property, we conclude that the leasehold interest was encompassed within the "bundle of rights" making up the fee interest in property that petitioner Jack M. Moores purchased. Consequently, petitioners are not entitled to the amortization *65 deductions that they reported during the years in issue, and we so hold. To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. Respondent contends that $ 1,932,080 of the $ 2,210,644 purchase price is allocable to the building. The balance of the purchase price ($ 278,564) is allocable to land ($ 175,000) and personal property ($ 103,564).↩
2. The amortization issue raised in this case was the subject of recently enacted legislation. Specifically, Congress amended sec. 167(c) under the Omnibus Budget Reconciliation Act of 1993 (OBRA), Pub. L. 103-66, sec. 13261(b)(2), 107 Stat. 312, 538, effective with respect to property placed in service after Aug. 10, 1993, to provide that, where property is acquired subject to a lease, no portion of the adjusted basis may be allocated to the leasehold interest but, rather, the entire adjusted basis shall be taken into account in determining the depreciation deduction with respect to the property subject to the lease. Consistent with this amendment, new sec. 197(e)(5) excludes "any interest under an existing lease of tangible property" from the definition of an intangible asset eligible for the amortization deduction under sec. 197(a). See OBRA, supra, sec. 13261(a), 107 Stat. 535. Notwithstanding these changes, Congress made it clear that it did not intend to influence the law as applied to property placed in service prior to the OBRA effective date, stating: No inference is intended as to whether a depreciation or amortization deduction is allowed under present law with respect to any intangible property that is either included in, or excluded from, the definition of a section 197 intangible. * * * [H. Conf. Rept. 103-213, at 673 (1993).]↩
3. On remand, we concluded that because the lease would terminate in the year 2023, the lease was subject to ultimate exhaustion, and, thus, an amortization deduction would be allowed. Moore v. Commissioner, T.C. Memo. 1955-219↩.
4. In addressing the issue of whether the premium value of a lease may be the subject of an amortization deduction, the U.S. Court of Appeals for the Fourth Circuit recognized the "apparent irreconcilable conflict" between the opinion of the U.S. Court of Appeals for the Seventh Circuit in Friend v. Commissioner, 119 F.2d 959 (7th Cir. 1941), affg. 40 B.T.A. 768 (1939), and the opinion of the U.S. Court of Appeals for the Ninth Circuit in Commissioner v. Moore, 207 F.2d 265 (9th Cir. 1953), revg. 15 T.C. 906 (1950). Schubert v. Commissioner, 286 F.2d 573, 580-581 (4th Cir. 1961). In any event, the final paragraph of the Schubert opinion suggests that, absent either legislative action or an opinion from the Supreme Court respecting the issue, the Court of Appeals for the Fourth Circuit would follow the approach adopted by the Court of Appeals for the Seventh Circuit in Friend v. Commissioner, supra.Id.↩ at 583.
5. We note with concern that the briefs filed by petitioners' counsel in this case contain misleading statements and quotations out of context regarding the controlling precedents. For example, petitioners' reply brief includes a citation to Fieland v. Commissioner, 73 T.C. 743 (1980), a case involving the amortization issue raised in the instant case. Counsel incorrectly summarized the case as follows: Similarly in Fieland, although finding that no premium was paid, the Tax Court "conceded that the costs of acquiring a premium lease are amortizable over the life of the lease."
The pertinent portion of the Fieland opinion reads as follows: The second alternate contention is that part of petitioner's purchase price should be allocated to the cost of acquiring a "premium lease," and that he should be entitled to depreciate this amount over the initial term of the lease. That position is contrary to thoroughly considered opinions in at least several cases which hold that a right to receive rents under a lease is not a depreciable asset separable from ownership of real property. Midler Court Realty, Inc. v. Commissioner, 61 T.C. at 595 (1974), affd. 521 F.2d 767 (3d Cir. 1975); Schubert v. Commissioner, 33 T.C. 1048, 1052-1054 (1960), affd. 286 F.2d 573 (4th Cir.), cert. denied 366 U.S. 960 (1961); Friend v. Commissioner, 40 B.T.A. 768, 771-772 (1939), affd. 119 F.2d 959, 960 (7th Cir.), cert. denied 314 U.S. 673 (1941). Petitioners have ignored these cases on brief. Moreover, even conceding that the costs of acquiring a premium lease are amortizable over the life of the lease, petitioners have not demonstrated that such a lease is involved in this case. * * * [Fieland v. Commissioner, supra at 755-756.]
Regrettably, such statement in the briefs filed on petitioners' behalf are simply an example of inappropriate references and citations and quoting out of context.↩
6. The present case is appealable to the Court of Appeals for the Tenth Circuit. Because that court would not be bound by Moore v. Commissioner, 15 T.C. 906 (1950), revd. 207 F.2d 265 (9th Cir. 1953), neither are we. See Golsen v. Commissioner, 54 T.C. 742, 756-757 (1970), affd. on other issues 445 F.2d 985↩ (10th Cir. 1971).